**Colleen LEE**

v.

**RHODE ISLAND COUNCIL 94, A.F.S.C.M.E., AFL–CIO, Local 186**

v.

**Town of Burrillville, by and through its Treasurer, John Mainville.**

**No. 2000–368–APPEAL.**

Supreme Court of Rhode Island.

May 16, 2002.

David W. Campbell, Providence, for Plaintiff.

Paul M. Giacobbe, Warwick, Andrew B. Prescott, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on March 5, 2002 on the appeal by the plaintiff, Colleen Lee (plaintiff or Lee) from the grant of summary judgment in favor of the defendants, Rhode Island Council 94 of the A.F.S.C.M.E., Local 186 (union or Council 94) and the Town of Burrillville, by and through its treasurer, John Mainville (town or Burrillville). A single justice of this Court issued an order directing the parties to appear and show cause why the issues they raised should not be summarily decided. After argument of counsel and a review of the memoranda of the parties, we conclude that cause has not been shown. Therefore, we proceed to decide this appeal at this time.

Lee was employed by the town as an administrative aide from January 1987 through · November 1993, when she was terminated for alleged misconduct. Lee, with the assistance of Council 94, instituted a grievance procedure contesting her termination. After the town manager rejected the grievance, Council 94 indicated that it intended to undertake arbitration of Lee's termination; however, the business agent for Local 186 failed to make a timely demand for arbitration as set forth in the collective bargaining agreement. According to the record, the union business agent testified at a deposition that he gave the request for arbitration to a secretary the day after the grievance was denied and did not think about it again. As a result, the arbitrator denied and dismissed the arbitration on the ground that it was not timely. The plaintiff instituted suit against the union, alleging a breach of the duty of fair representation. Council 94 filed a third-party complaint against the town seeking indemnification against any potential liability for plaintiff's wrongful termination.

 Significantly, after her efforts to be reinstated were rebuffed, Lee sought to collect unemployment security benefits from the Department of Employment and Training. The initial denial of benefits by a department referee (DET referee) was affirmed by the Board of Review of the Department of Employment and Training (DET) and incorporated by reference in the decision of DET. The DET referee concluded that the claimant was discharged under disqualifying circumstances within the meaning of G.L.1956 § 28–44–

18 of the Rhode Island Employment Security Act. The DET referee specifically found that the proved misconduct in connection with the work in this case was "the willful disregard of the interest of one's employer." Thereafter, plaintiff sought judicial review of DET's decision pursuant to G.L.1956 § 42-35-15, the Administrative Procedures Act. In a written decision, a judge of the District Court, based on the record before him, affirmed the decision of DET and concluded that there was legally competent evidence to support DET's findings that Lee was discharged for misconduct amounting to "the willful disregard of the interest of one's employer."[1]

The plaintiff moved for summary judgment concerning the claim of breach of the duty of fair representation, and Council 94 and the town filed cross motions for summary judgment. In a written decision, the hearing justice granted summary judgment to Council 94 and the town and denied relief to plaintiff. Although defendants raised the defense of *res judicata* arising from the decision of DET, that denied Lee unemployment benefits, the hearing justice failed to address this issue in his decision.

### Duty of Fair Representation

■ In granting summary judgment to defendants, the hearing justice looked to federal law for guidance in determining what constitutes a breach of the duty of fair representation by a labor union. Citing *Vaca v. Sipes*, 386 U.S. 171, 190, 191, 87 S.Ct. 903, 916, 917, 17 L.Ed.2d 842, 857, 858 (1967), the hearing justice concluded that the duty of fair representation is breached upon a showing of arbitrary, discriminatory, or bad faith conduct, or by the handling of a grievance in a "perfunctory" manner and not by union error in failing to process a meritorious grievance. The hearing justice, noting that it was undisputed that the union had failed to make a timely demand for arbitration, found this neglect to be "[h]uman error [and] not indifference." Thus, he concluded there was no evidence that the union acted in an arbitrary, discriminatory, or bad faith manner; but rather, Council 94 was guilty of mere negligence that did not amount to a breach of the duty of fair representation.

■ In *Belanger v. Matteson*, 115 R.I. 332, 341, 346 A.2d 124, 131 (1975), this Court first addressed the duty owed by a labor union to its members and adopted the federal rule that, as the exclusive representative of all the employees in a given class, a labor union is under a duty to fairly and adequately represent the interests of all those whom it represents. This duty extends to the resolution of disputes by means of grievance and arbitration. "The duty upon the Union here is to ' * * * in good faith and in a nonarbitrary manner, make decisions as to the merits of particular grievances,' and, if it decides to pursue a grievance, it must not do so in a perfunctory manner." *Id.* (quoting

1. We note that in his decision the District Court judge made additional factual findings as follows, "the court finds that the conduct of the claimant evinces such a willful and wanton disregard of the town of Burrillville's interests as is found in deliberate violations and disregard of standards of behavior which the employer has a right to expect of his employee." Since it is well settled that judicial review of agency decisions is limited to questions of law and the reviewing court may not make factual findings, we deem this finding to be a nullity. *See Bunch v. Board of Review, Rhode Island Department of Employment and Training,* 690 A.2d 335, 337 (R.I. 1997) (judicial review of agency decisions is limited to a review of the record to determine whether there is legally competent evidence to support the administrative decision). Therefore, we decline to accord the preclusive effect of collateral estoppel to findings the tribunal is without authority to make.

*Vaca,* 386 U.S. at 194, 87 S.Ct. at 919, 17 L.Ed.2d at 860). We recognize that unions are not mandated to provide perfect representation or even representation that is free of negligence. *See Achilli v. John J. Nissen Baking Co.,* 989 F.2d 561, 563 (1st Cir.1993). Further, mere negligence has been held to be insufficient to substantiate a claim for breach of the duty of fair representation. *United Steelworkers of America v. Rawson,* 495 U.S. 362, 372–73, 110 S.Ct. 1904, 1911, 109 L.E.2d 362, 375 (1990). Throughout this litigation the union has maintained that it was guilty only of negligence and therefore cannot be found to have violated the duty of fair representation. However, the testimony of the business agent that he handed the request to a secretary and never thought of it again is evidence that Lee's arbitration was handled in a perfunctory manner. Further, the penalty imposed upon Lee by the employer was termination of her employment with the town, including loss of all seniority, salary and benefits. Given these high stakes, Lee's interest in pursuing her right to arbitration was compelling. We are not convinced that under the circumstances presented in this case, the failure to perform the ministerial act of a timely demand for arbitration amounts to mere negligence. When the neglect of the union completely extinguishes the employee's right to a determination of the merits of her termination, we conclude that the failure by the union to take such a basic step as a timely filing to contest the most significant sanction available to an employer is an example of arbitrary and perfunctory conduct that amounts to unfair representation. Accordingly, we sustain plaintiff's appeal and vacate the decision of the hearing justice. However, in order to recover against the union, plaintiff must establish, by a preponderance of the evidence that an arbi-

trator would have ruled in her favor and set the termination aside.

## Collateral Estoppel

The defendants assert that principles of collateral estoppel bar the relitigation of plaintiff's claim and argue that plaintiff's termination was found to be for "proved misconduct" by DET, such that Lee cannot recover against the union for breach of the duty of fair representation. "This Court has held that the doctrine of collateral estoppel prevents the relitigation of an issue actually litigated and determined between the same parties" or those in privity with them. *Wilkinson v. The State Crime Laboratory Commission,* 788 A.2d 1129, 1141 (R.I.2002). Under our well settled rules, collateral estoppel is applicable when there is " 'an identity of issues[,] the prior proceeding * * * [has] resulted in a final judgment on the merits[,] and the party against whom the collateral estoppel is sought must be the same as or in privity with the party in the prior proceeding.' " *Id.* (quoting *Commercial Union Insurance Co. v. Pelchat,* 727 A.2d 676, 680 (R.I.1999)). Our review of the record convinces us that all three elements necessary for the application of collateral estoppel are present in this case: first, the town contested Lee's eligibility for unemployment benefits and presented evidence sufficient for a fact-finder to conclude that she was terminated for "proved misconduct," second, this finding culminated in a final judgment and, finally, Lee is the party against whom the collateral estoppel is sought. Thus, we conclude that the finding that Lee was terminated for "proved misconduct" is conclusive and may not be relitigated. This does not end the inquiry, however, because under our law an arbitrator is free to modify the penalty imposed by the employer and fashion what he or she considers to be the more appro-

priate remedy. General Laws 1956 § 28–9–1 provides in relevant part as follows:

"Unless the parties agree otherwise in writing that the arbitrator shall have no authority to modify the penalty imposed by the employer in the arbitration of matters relating to the disciplining of employees, including, but not limited to, termination, suspension, or reprimand, *the arbitrator shall have the authority to modify the penalty imposed by the employer and/or otherwise fashion an appropriate remedy.*" (Emphasis added).

Thus, an arbitrator, in municipal employment arbitration, is vested with statutory authority to set aside the penalty imposed by the employer and fashion an appropriate remedy. Except in certain narrow circumstances, this Court has recognized this grant of statutory authority to an arbitrator that modified the penalty imposed by the employer. In *Rhode Island Brotherhood of Correctional Officers v. State*, 643 A.2d 817, 822 (R.I.1994), we reversed a decision of the Superior Court that vacated an arbitrator's award that reinstated an employee of the Department of Corrections and held that the issue of whether the termination was for just cause was clearly an arbitrable grievance that should therefore be accorded a deferential standard of review.

This Court has recognized that there are certain narrow circumstances involving critical aspects of the exercise of state power in which a supervisor "must be allowed to act in a manner free of the constraints of the CBA[.]" However, we have limited those situations to questions that interfere with the power of the employer to perform an essential aspect of its responsibilities. *Id.* Accordingly, we conclude that *res judicata* arising from DET's decision that the plaintiff was terminated for proved misconduct is a final determination not subject to relitigation before the arbitrator. However, the question of whether an arbitrator, aided by a complete record, may have fashioned a more appropriate remedy in accordance with his statutory authority was not finally determined and could have been litigated by Lee, but for Council 94's negligent and perfunctory handling of her demand for arbitration.

## Conclusion

For the reasons set forth herein, we sustain the appeal of the plaintiff and vacate the judgment entered by the Superior Court. The papers in this case are remanded to the Superior Court for further proceedings consistent with this opinion.

Flanders, Justice, dissenting.

Respectfully disagreeing with my colleagues, I would hold that the Board of Review of the Department of Employment and Training's (DET) denial of unemployment compensation to this plaintiff, based upon her record of "proved misconduct" as a municipal employee, *see* G.L.1956 § 28–44–18 (providing that "[a]n individual who has been discharged for proved misconduct connected with his or her work" is ineligible for unemployment-compensation benefits), collaterally estopped her from pursuing a wrongful-discharge claim via arbitration and, thus, from suing her union for an alleged breach of its duty of fair representation. Although, in the absence of a prior adjudication, "the arbitrator has the authority to modify the penalty imposed by the employer and/or otherwise fashion an appropriate remedy," G.L.1956 § 28–9–1, I would hold that this authority, like the arbitrator's authority to rule on the liability aspects of an employer-employee dispute, is subject to issue- and claim-preclusion doctrines. The majority does not appear to disagree with this conclusion

because it holds "that the finding that Lee [the employee] was terminated for 'proved misconduct' is conclusive and may not be relitigated." Nevertheless, relying upon a portion of the language in § 28–9–1, it allows the employee to relitigate "the penalty imposed by the employer," so that the arbitrator can "fashion what he or she considers to be the more appropriate remedy." But I can see no basis for picking and choosing which portions of the DET and District Court rulings should be enforced via collateral estoppel and which can be relitigated. Indeed, absent the prior DET adjudication, let alone the District Court's final judgment, the question of whether the employee had committed any misconduct whatsoever would also have been an arbitrable issue under § 28–9–1 ("this chapter shall apply, but is not limited to, controversies respecting terms and conditions of employment"). Yet the majority apparently concedes that "the [DET] board's decision that plaintiff was terminated for proved misconduct is a final determination not subject to relitigation before the arbitrator." Nevertheless, in the same breath, the majority would allow the employee to relitigate the propriety of her termination before an arbitrator because the arbitrator "may have fashioned a more appropriate remedy in accordance with his statutory authority." The problem I have with this reasoning, however, is twofold: (1) absent the prior DET ruling, an arbitrator pursuant to § 28–9–1 could have found, "in accordance with his statutory authority," that the employee had not engaged in any misconduct whatsoever, and not just that the discharge sanction was inappropriate; and (2) because § 28–9–1 accords arbitrators the authority to decide both liability and remedial issues in government-employment disputes, I can discern no principled basis for giving collateral estoppel effect to the DET's liability determination but not to its decision that the employee's discharge was appropriate given her "proved misconduct."

Because a union cannot have acted arbitrarily in failing to pursue a meritless grievance, I would deny the employee's appeal, affirm the Superior Court's dismissal of her complaint, and, therefore, not reach any of the other issues raised by this appeal. For plaintiff to prevail in any arbitration with her municipal employer, she ultimately had to show that the town lacked just cause for firing her. *See Del-Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *see also MacQuattie v. Malafronte,* 779 A.2d 633, 636 (R.I.2001) (per curiam). "'To prevail against either the [employer] or the Union * * * [the plaintiff] must not only show that [her] discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.'" *DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2291, 76 L.Ed.2d at 489 (quoting *United Parcel Service v. Mitchell,* 451 U.S. 56, 66–67, 101 S.Ct. 1559, 1565–66, 67 L.Ed.2d 732, 743 (1981) (Stewart, J., concurring)). "The employee may, if [s]he chooses, sue one defendant and not the other; but the case [s]he must prove is the same whether [s]he sues one, the other, or both." *DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2291, 76 L.Ed.2d at 489. Most importantly, a union cannot be found to have arbitrarily failed to pursue a grievance if the grievance lacks merit. *See Ooley v. Schwitzer Division, Household Manufacturing, Inc.,* 961 F.2d 1293, 1302–03 (7th Cir.1992).

In affirming the DET's denial of unemployment benefits to plaintiff after the town had discharged her, the District Court found that competent evidence existed to support DET's determination that the town had discharged plaintiff for willful misconduct. The DET referee found

not only that "[t]he claimant was discharged for her failure to follow a direct order," but also that she "had a pattern of not following the established office procedures." Indeed, as the DET referee noted, "[b]ecause of the claimant's work performance, she had received progressive disciplinary action including admonitions, reprimands, and suspension. This failure to follow a direct order resulted in discharge." According to *Chartier v. Department of Employment and Training, Board of Review*, 673 A.2d 1078, 1080 (R.I. 1996), the employee's willful disregard of her supervisor's instructions constituted "proved misconduct" under § 28–44–18, allowing the town to discharge her without incurring any liability for paying her unemployment benefits. Thus, the DET found not only that the employee's misconduct was "proven" but that the town had the right to discharge her for that misconduct. The DET Board of Review unanimously affirmed these findings. If DET had believed that the town's discharge remedy was too harsh a sanction in response to the employee's misconduct, then the employee would have been entitled to collect unemployment compensation. On the employee's appeal, the District Court affirmed DET's ruling "that the conduct of the [plaintiff] evinces such a willful and wanton disregard of the town of Burrillville's interests as is found in deliberate violations and disregard of standards of behavior which the employer has a right to expect of his employee." Although the majority deems this finding to be a nullity, I would hold that this finding is the very definition under law of what it means for an employee to engage in "proved misconduct." *See Bunch v. Board of Review, Rhode Island Department of Employment and Training*, 690 A.2d 335, 337 (R.I. 1997).

Thus, I must respectfully disagree with the majority's decision to deem "a nullity" the District Court's finding "that the conduct of the claimant evinces such a willful and wanton disregard of the town of Burrillville's interests as is found in deliberate violations and disregard of standards of behavior which the employer has a right to expect of the employee." When DET ruled that the town had discharged this employee for her "proved misconduct," it necessarily found, as a matter of law, that the employee had engaged in the very conduct that the majority deems a nullity. This is so because, under § 28–44–18, the term "misconduct"

> "is *limited* to conduct evincing such willful or wanton disregard of an employer's intent as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his [her, or its] employee, or in carelessness or, negligence of such degree or recurrence as to manifest equal culpability, wrongful intent, or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertancies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute [§ 28–44–18]." *Turner v. Department of Employment Security, Board of Review*, 479 A.2d 740, 741–42 (R.I.1984) (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636, 640 (1941)). (Emphasis added.)

*See also Bunch*, 690 A.2d at 337 (adopting this definition of misconduct "as our own under G.L.1956 § 28–44–18"). Thus, when DET in this case found that the employee had engaged in "proved misconduct" suffi-

cient to warrant her discharge, it necessarily found, as the District Court ruled, that her misconduct was severe enough to satisfy the definition of "misconduct" that we have adopted "as our own under G.L.1956 § 28–44–18" in the *Turner* and *Bunch* cases. Far from constituting a nullity, the District Court's articulation of the legal definition of "misconduct" was a *sine qua non* for the DET's denial of unemployment compensation to this employee.

Given the DET's finding upholding this employee's discharge for her proved misconduct, I would hold that the District Court's final judgment in the employee's unsuccessful appeal of DET's denial of unemployment compensation collaterally estopped the employee from later contending in an arbitration proceeding that the town wrongfully discharged her. *Accord Volino v. General Dynamics,* 539 A.2d 531, 532 (R.I.1988) (affirming Superior Court judgment dismissing employee's wrongful discharge complaint because the Department of Employment Security's denial of unemployment benefits to the employee for actions not in the best interest of the employer "collaterally estopped relitigation of the wrongful-discharge issue."); *Dearborn Heights School District No. 7 v. Wayne County MEA/NEA,* 233 Mich.App. 120, 592 N.W.2d 408, 411 (1998) (doctrine of collateral estoppel prevented employee and her union from arbitrating the issue of whether employee had committed a battery on fellow worker because the State Tenure Commission had previously found that she had committed the battery). Importantly, the DET proceeding did not just rule on whether the employee was guilty of misconduct; rather, it ruled that the employer was justified in *discharging* the employee because of her proved misconduct. Indeed, if DET had concluded that the sanction of discharge had been too severe, or if DET had believed that the misconduct in question did not warrant discharg-

ing the employee from her job, then DET would have been duty bound to grant unemployment compensation to the employee because only if the employee's "proved misconduct" warranted the employee's discharge from her job would she be disqualified from obtaining unemployment compensation.

The Restatement (Second) *Judgments* § 83 at 269 (1982), reaches the same conclusion:

> "Where an administrative forum has the essential procedural characteristics of a court * * * its determinations should be accorded the same finality that is accorded the judgment of a court. The importance of bringing a legal controversy to conclusion is generally no less when the tribunal is an administrative tribunal than when it is a court."

For plaintiff to be collaterally estopped by a prior adjudication from later challenging whether she was wrongfully terminated, three factors must exist: (1) an identity of issues between the two proceedings, (2) a final judgment on the merits in the prior proceeding, and (3) the party against whom collateral estoppel is asserted must be the same as or in privity with a party in the prior action. *E.W. Audet & Sons, Inc. v. Fireman's Fund Insurance Co.,* 635 A.2d 1181, 1186 (R.I.1994); *Wilkinson v. State Crime Laboratory Commission,* 788 A.2d 1129 (R.I.2002); *see also State v. Pacheco,* 763 A.2d 971, 980 (R.I.2001). In *Wilkinson,* we recently held that a prior judgment concerning unemployment compensation benefits barred one of the litigants in a later lawsuit involving the same parties to that earlier proceeding from relitigating one of the key factual issues determined in the earlier proceeding (namely, what entity employed the claimant). The plaintiff argues that collateral estoppel does not apply in this case because there is a lack of "identity between

the parties" and "there exists no identity of issues" between the DET proceeding and this lawsuit. She argues that the different concerns of the two proceedings show that the issues decided were dissimilar. She also notes that the District Court made no findings of fact under the applicable review standard of the Administrative Procedures Act.

I am of the opinion that all three factors set out in *E.W. Audet & Sons, Inc.* are present in this case. Although the DET and the District Court did not use the phrase "just cause," they decided, in essence, that the town had acted properly in firing the employee because of her deliberate disregard of the municipal employer's best interest. They did so by concluding that the town had discharged her because of the employee's record of "proved misconduct." The employee (the party against whom collateral estoppel is asserted) was a party to that action. The town also was a party. Although the union was not a party to the DES proceeding, identity of parties is not required for issue-preclusion principles to bar relitigation; rather, if the party against whom collateral estoppel is asserted (namely, plaintiff Colleen Lee) was also a party to the earlier proceeding, collateral estoppel can be applied against such a party because that party already has had a fair opportunity to litigate the issue in the earlier proceeding. *See E.W. Audet & Sons, Inc.*, 635 A.2d at 1186. Here, the District Court affirmed that the DET's "proved-misconduct" findings were supported by competent evidence. Because neither party sought nor obtained further review of the District Court judgment, it constituted a final adjudication on the issue of plaintiff's proved misconduct at work, as well as the propriety of the town's action in discharging her for such misconduct.

The United States Supreme Court has long applied issue-preclusion doctrines to final administrative determinations, such as the DET ruling in this case:

"When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *Astoria Federal Savings and Loan Association v. Solimino*, 501 U.S. 104, 107, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96, 104 (1991) (quoting *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642, 661 (1966)).

Furthermore,

"a losing litigant deserves no rematch after a defeat fairly suffered * * * on an issue identical in substance to the one [s]he subsequently seeks to raise. To hold otherwise would * * * impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution." *Id.* at 107–08, 111 S.Ct. at 2169, 115 L.Ed.2d at 104 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552, 559 (1979)).

The Court further stated that:

"The principal holds true when a court has resolved an issue, and should do so equally when the issue has been decided by an administrative agency * * *." *Id.* (citing *University of Tennessee v. Elliott*, 478 U.S. 788, 798, 106 S.Ct. 3220, 3225–26, 92 L.Ed.2d 635, 646 (1986)).[2]

---

2. *See also University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (federal courts must give a state agen-cy's fact-finding the same preclusive effect to which it would have been entitled in state court); *Kremer v. Chemical Construction*

Moreover, the burden of proof in the prior action was on the employer to show that the employee was guilty of proved misconduct and that the employer fired her because of her misconduct. For these reasons, as well as the previous determinations of the United States Supreme Court, I would hold that the employee was collaterally estopped from challenging in a later wrongful-discharge proceeding the town's assertion that it possessed just cause for firing her. See *Volino*, 539 A.2d at 532.

Given the DET's finding that the town discharged plaintiff because of her record of proved misconduct, she cannot succeed as a matter of law on her claim that the union violated its duty of fair representation. See *Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088 (9th Cir.1990) (employee's claim against union for breach of duty of fair representation was precluded where state court affirmed arbitrator's conclusion that there was sufficient cause for the discharge). This is so because the union cannot be found to have acted arbitrarily in failing to pursue a meritless grievance. Its alleged negligence in failing to file a timely grievance was therefore harmless error.

Here, as in *State Department of Children, Youth and Families v. Rhode Island Council 94, AFSCME, AFL–CIO*, 713 A.2d 1250, 1258 (R.I.1998) (holding that if a government employee has been found guilty of job-related "proved misconduct" in an earlier DET proceeding "warranting not only her discharge but the denial of employment compensation, then *a fortiori* [such an employee] * * * is also dischargeable for just cause* ") (emphasis added), it would be irrational for an arbitrator to conclude that, notwithstanding plaintiff's long history of insubordination and disregard of her municipal employer's best interests, and notwithstanding the DET's and the District Court's finding that she was discharged for her "proved misconduct," the town still lacked just cause to discharge her from employment but could discipline her only via some lesser sanction. *See, e.g., Rhode Island Laborers' District Council v. State*, 592 A.2d 144, 146 (R.I.1991) (holding that an arbitrator's reduction of the employer's discharge sanction to a six-month suspension was irrational in a case involving the employee's insubordination: "Although the penalty of discharge has from time to time been referred to as a capital penalty in the labor context, it is equally true that direct and flagrant insubordination constitutes a capital offense in the context of employer-employee relations.").

In this case, as DET found, the town fired the employee only after she disobeyed a direct order from her supervisor to have another person in the office check the

---

Corp., *456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (holding administrative proceedings and judicial review by New York State Courts collaterally estopped the plaintiff under federal law);* Roy v. Jasper Corp., *666 F.2d 714 (1st Cir.1981) (collateral estoppel effect given to findings of New Hampshire's Workmen's Compensation Commission);* United States v. Karlen, *645 F.2d 635 (8th Cir.1981) (collateral estoppel effect given to the findings of the Interior Board of Indian Appeals);* Consolidated Express, Inc. v. New York Shipping Association, Inc., *602 F.2d 494 (3d Cir.1979), rev'd on other grounds, 448 U.S.*

*902, 100 S.Ct. 3040, 65 L.Ed.2d 1131 (1980) (collateral estoppel effect given to the findings of the NLRB);* Bowen v. United States, *570 F.2d 1311 (7th Cir.1978) (collateral estoppel effect given to the findings of the National Transportation Safety Board);* Gear v. City of Des Moines, *514 F.Supp. 1218 (S.D.Iowa 1981) (collateral estoppel effect given to the findings of the Iowa Department of Job Services);* and Barnes v. Oody, *514 F.Supp. 23 (E.D.Tenn.1981) (collateral estoppel effect given to the findings of the Merit System Protection Board).*

tax forms before mailing them. And she had been admonished, reprimanded, and suspended in the past for the same misconduct that led to her dismissal. If an arbitrator could find that the penalty imposed by the employer was too harsh in this case, then the employee should have been allowed to collect unemployment compensation because that benefit could be denied to the employee only if she had been properly discharged for her "proved misconduct."

Thus, allowing an arbitrator to proceed to reach a possible contrary conclusion would be to countenance the possibility of two totally inconsistent rulings: in the first case, DET and the District Court will have ruled that the employee's proved misconduct entitled the employer to discharge her from employment and disqualified the employee from receiving unemployment compensation. In the second case, an arbitrator would be allowed to conclude that, notwithstanding the employee's record of misbehavior and insubordination, the employer was not allowed to terminate her from employment because the penalty of discharge was too harsh. *See John Morrell & Co. v. Local Union 304A of the United Food and Commercial Workers, AFL–CIO,* 913 F.2d 544 (8th Cir.1990) (arbitrator prevented from independently examining the meaning of the no-strike clause in favor of the union after jury trial had found for the employer). There is simply no way to reconcile these two contrary results because, if an arbitrator could find that the employee should not have been fired from her job—reasoning that the misconduct in question did not warrant such a severe sanction—then the employee should have been entitled to collect unemployment compensation for her wrongful discharge. But, as we know from the DET rulings and from the District Court's final judgment, this employee's discharge was anything but wrongful.

To avoid this potential inconsistency and the disutility of litigating the same issue twice, I would deny the plaintiff's appeal, apply issue-preclusion principles to this case, and affirm the Superior Court's judgment. As we stated in *St. Pius X Parish Corp. v. Murray,* 557 A.2d 1214, 1217 (R.I. 1989), "[e]very employer has a right, to some extent, to govern its employees through the establishment of performance standards and rules of conduct the violation of which may be grounds for dismissal." This includes our cities and towns, and I would not allow an arbitrator to reach a contrary conclusion and "substitute his or her judgment for an appointing authority in selection of discipline," *Rhode Island Laborers' District Council,* 592 A.2d at 146, after three levels of the DET and the District Court have found against the employee on this same issue and have ruled repeatedly that the town had the right to discharge this employee for her proved misconduct.