[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
The matter before this Court is Plaintiff — East Providence School Committee's motion to vacate an arbitration award. The R.I. Council 94, AFSCME ("Union") objects to the School Committee's motion. Jurisdiction is pursuant to G.L. 1956 § 28-9-18.
 FACTS AND TRAVEL
The arbitration award in question originates from the termination of maintenance mechanic/custodian, Leonard Gregory ("Gregory" or "Grievant"). After serving as a maintenance mechanic for seven years, Gregory was terminated from his employment with the School Department after a hearing on May 6, 2003, where evidence of his misconduct was presented. His misconduct was exemplified by chronic unauthorized absences from the workplace. A private investigation firm, hired by the Superintendent of Schools, observed Gregory and his co-worker for a period of approximately two weeks and submitted a report to the School Committee which indicated that Gregory had left work for extended periods of time. Gregory is represented in this matter by the Rhode Island Council 94, AFSCME ("Union").
Upon being discharged, Gregory filed for unemployment compensation benefits with the Department of Employment and Training ("DET"). The DET Director determined that Gregory had been terminated under non-disqualifying circumstances and awarded Gregory unemployment compensation benefits. An appeal by the School Committee followed. In the interim, Gregory received unemployment compensation benefits.
The appeal was heard on July 9, 2003 before a DET Referee. On July 29, 2003, the DET Director's decision was reversed because the Referee found proven misconduct while Gregory was employed with the School Committee and, thus, denied him unemployment benefits. The Referee's findings were affirmed by the DET Board of Review on September 18, 2003. Gregory did not appeal the Board of Review's decision.
Separately, Gregory had filed a grievance under the Collective Bargaining Agreement ("CBA") as between the Union and the School Committee to arbitrate his employment termination. Hearings regarding this matter were conducted on October 23, 2003 and November 12, 2003. The arbitrator issued his award on February 13, 2004, ordering Gregory's employment be reinstated and that his discharge be reduced to a written warning. Additionally, the arbitrator ordered that Gregory be made whole for all lost wages and benefits, with no offset for unemployment benefits previously received.
 STANDARD OF REVIEW
Judicial authority to review or vacate an arbitration award is limited. Rhode Island Council 94, AFSCME, AFL-CIO v. State, 714 A.2d 584,587 (R.I. 1998). An arbitration award may be vacated when the arbitrator manifestly disregarded the law or the contract, or when the arbitration award was completely irrational. Prudential Property and CasualtyInsurance Co. v. Flynn, 687 A.2d 440, 442 (1996). As long as the award "draws its essence" from the contract and is based upon a "passably plausible" interpretation of the contract, it is within the arbitrator's authority, and not subject to vacation by the Court. Jacinto v. Egan,391 A.2d 1173 (R.I. 1978). Grounds for vacating an award are provided by statute in G.L. 1956 § 28-9-18.
 "(a) In any of the following cases the court must make an order vacating the award, upon the application of any party to the controversy which was arbitrated:
 (1) When the award was procured by fraud.
 (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.
 (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13.
 (b) A motion to vacate, modify, or correct an arbitrator's award shall not be entertained by the court unless the award is first implemented by the party seeking its vacation, modification, or correction; provided, the court, upon sufficient cause shown, may order the stay of the award or any part of it upon circumstances and conditions which it may prescribe.
 (c) If the motion to vacate, modify, or correct an arbitrator's award is denied, the moving party shall pay the costs and reasonable attorneys' fees of the prevailing party."
An arbitrator may exceed his or her powers, thereby requiring a court to vacate an arbitration award if that award fails to "draw its essence" from the collective bargaining agreement or is not based upon a "passably plausible" interpretation of the same. R.I. Brotherhood of CorrectionalOfficers, 707 A.2d at 1234. Therefore, a court may vacate an award where the arbitrator manifestly disregarded a contractual provision, reached an irrational result, R.I. Council 94, AFSCME, AFL-CIO, 714 A.2d at 588, disregarded clear-cut contractual language or attributed to the language "a meaning that is other than that which is plainly expressed." State v.R.I. Employment Security Alliance, Local 401, 840 A.2d 1093, 1096 .
A party asserting that the arbitrator has exceeded his or her authority bears the burden of proving this contention. Coventry Teachers' Alliancev. Coventry Sch. Comm., 417 A.2d 886, 888 (R.I. 1980). In such a case, "every reasonable presumption in favor of the award will be made." Id.
Furthermore, "the statutory authority to vacate an arbitration award where the arbitrators exceeded their powers does not authorize a judicial re-examination of the relevant contractual provisions." Dept. of MentalHealth, Retardation, and Hosps. v. R.I. Council 94, A.F.S.C.M.E.,AFL-CIO, 692 A.2d 318, 323 n. 11 (R.I. 1997) (internal quotations omitted).
COLLATERAL ESTOPPEL
Plaintiff first argues that the doctrine of collateral estoppel barred Gregory from relitigating the matter of his termination at arbitration because DET had already entered a final judgment on the issue. It is Plaintiff's position that when Gregory chose not to appeal the DET decision, he forfeited his right to arbitration because he accepted the DET decision as the final judgment on the issue of his termination. Thus, Plaintiff contends that the arbitration award should be vacated under the doctrine of collateral estoppel.
Conversely, the Union maintains that the doctrine of collateral estoppel is inapplicable here because there was no final judgment on the merits at the time Gregory's case was arbitrated. It is the Union's position that the DET decision was not a final judgment on the merits because it was not affirmed by the District Court. Moreover, the Union asserts that Gregory's right to a DET determination did not affect his right to have an arbitrator make a determination as to whether termination was the appropriate penalty for the wrongful conduct at issue.
The doctrine of collateral estoppel is applicable where there is "an identity of issues, a prior proceeding results in a final judgment on the merits, and the party against whom the collateral estoppel is sought is the same as, or in privity with, the party in the prior proceeding." Leev. Rhode Island Council 94, 796 A.2d 1080, 1084 (R.I. 2002) (citingWilkinson v. The State Crime Laboratory Commission, 788 A.2d 1129, 1141
(R.I. 2002)) (quoting Commercial Union Insurance Co. v. Pelchat,727 A.2d 676, 680 (R.I. 1999)). In the present case, it is indisputable that the DET proceeding identified the issue of Gregory's termination and that Gregory is the party against whom collateral estoppel is sought. Consequently, the sole issue for this Court to determine is whether the DET decision constituted a final judgment on the merits, which precluded the arbitrator from modifying Gregory's penalty.
The Rhode Island Supreme Court has held that a board of review's decision is tantamount to a final judgment for defense preclusion purposes if the defendant does not appeal it. Town of Richmond v. WawaloamReservation, Inc., 850 A.2d 924, 933 (R.I. 2004) (citing Department ofCorrections v. Tucker, 657 A.2d 546, 550 (R.I. 1995)). Additionally, the Court has recently declared that res judicata may attach to review board decisions as long as the tribunal acted in a quasi judicial capacity.Id. "An administrative tribunal acts in a quasi judicial capacity when it affords the parties substantially the same rights as those available in a court of law, such as the opportunity to present evidence, to assert legal claims and defenses, and to appeal from an adverse decision." Id.
Here, DET allowed the parties to present evidence and testimony in support of their legal arguments. Furthermore, the Board's decision expressly stated that Defendant had thirty days to appeal DET's decision to the District Court before it became a final judgment — an option which Defendant chose not to pursue. Because the proceeding before DET involved an administrative agency acting in a quasi-judicial capacity, res judicata precludes Defendant from relitigating issues that were argued before and decided by the Board. See id. at 934.
The question for this Court is whether an arbitrator was free to modify Gregory's penalty after a final judgment had been entered on Gregory's right to unemployment benefits. While our Supreme Court has never addressed a situation mirroring the facts of the instant case, two recent cases decided by the Rhode Island Supreme Court, guide this Court in reaching a determination in the case at bar. Taylor v. Delta ElectricPower, 741 A.2d 265 (R.I. 1999), concerned a general manager who terminated her three year contract with her employment and thereafter demanded arbitration pursuant to her employment contract and applied to DET for unemployment benefits. Id. at 266. After receiving an adverse decision from DET, Taylor appealed DET's decision and proceeded to arbitration. Id. Before the District Court entered a final judgment with respect to the DET appeal, the arbitrator entered an award in Taylor's favor. Id. at 267. The Rhode Island Supreme Court cited two reasons for affirming the trial justice's holding that the arbitrator was not collaterally estopped from deciding Taylor's breach of contract claim. First, "`the final District Court decision was rendered after the arbitrator . . . rendered his award with respect to liability'" and second, "`the factual issues before the Board and the Court . . . [were] not the same issues in the arbitration matter.'" Id.
Plaintiff attempts to distinguish this case from Taylor on the basis that Taylor appealed the Board's decision and the arbitrator in Taylor
entered an award before the District Court entered a final judgment on the merits. While this is undoubtedly an important distinguishing factor, this Court cannot ignore the Supreme Court's unequivocal position that a Board's determination with respect to unemployment benefits does not necessarily constitute a final judgment on the merits of other claims concerning an employee's termination.
Furthermore, Plaintiff's reliance on Lee v. Rhode Island Council 94,796 A.2d at 1084, is unavailing as that case lends even greater support to the Union's position that a final adverse judgment concerning unemployment benefits does not preclude an arbitrator from setting aside a penalty. Like Gregory, the plaintiff in Lee was terminated for alleged misconduct and instituted a grievance procedure contesting her termination as well as an action to collect unemployment security benefits from the DET. Id. at 1082-84. Due to the Union's failure to make a timely demand for arbitration, however, the arbitration was denied and dismissed and only the plaintiff's claim for unemployment benefits was heard. Id. The DET concluded that the plaintiff was not entitled to unemployment benefits and the District Court affirmed. Id. Subsequently, the plaintiff moved for summary judgment concerning the claim of breach of duty of fair representation by the Union and sought to have the matter arbitrated. Id. The Rhode Island Supreme Court held that arbitration was not barred on collateral estoppel grounds because although there was a final determination that the plaintiff was terminated for proved misconduct, "under [Rhode Island] law an arbitrator is free to modify the penalty imposed by the employer and fashion what he or she considers to be the more appropriate remedy." Id. at 1085. Relying on § 28-9-1, the Lee
Court declared that "an arbitrator in municipal employment arbitration is vested with statutory authority to set aside the penalty imposed by the employer and fashion an appropriate remedy." Id.
Following the above reasoning, this Court finds that collateral estoppel did not bar the arbitrator in this case from entering an arbitration award in favor of Gregory. While it is clear that DET's determination regarding Gregory's misconduct was res judicata, it is equally clear that an arbitrator was free to modify Gregory's penalty in accordance with the statutory authority conferred by § 28-9-1.
ELECTION OF REMEDIES
Plaintiff further argues that Gregory, having lost at DET, and not having appealed the DET's decision, was precluded from arbitrating his discharge in a grievance forum under the doctrine of election of remedies. The Union responds that the doctrine of election of remedies does not apply because Gregory's claim for unemployment compensation is not the same as his arbitration claim to determine whether there was just cause for discharge.
The Rhode Island Supreme Court has held that when one party to a CBA attempts to take advantage of a statutorily-prescribed administrative remedy and loses, the election-of-remedies doctrine prohibits that party from pursuing the same dispute through a grievance procedure. Sch. Comm.of N. Kingstown v. Crouch, 808 A.2d 1074 (R.I. 2002). As Gregory did not pursue the same dispute at arbitration as he did at the DET hearing, it is clear that the election of remedies doctrine does not apply in the instant case. The arbitration process serves to determine whether just cause existed for the termination of employment, whereas DET evaluates whether an employee is eligible for unemployment benefits. DET had no authority to decide Gregory's request for reinstatement and back pay, but only had the power to determine Gregory's eligibility to receive unemployment benefits. Thus, this Court finds Plaintiff's election of remedies argument to be without merit.
RATIONALITY OF ARBITRATION AWARD
Finally, Plaintiff argues that the arbitration award should be vacated because the arbitrator came to a completely irrational result when he reduced Gregory's termination to a warning and reinstated him with payment of all lost wages, benefits and no set-off for unemployment compensation benefits. Plaintiff asserts that the arbitrator's failure to offset Gregory's award by the amount of unemployment compensation Gregory received before DET's decision became final is demonstrative of the arbitration award's irrationality.
In response, the Union argues that the arbitrator's award was not irrational because under Rhode Island law an arbitrator is authorized to decide whether the penalty imposed by an employer was appropriate and, if not, to modify that penalty and/or fashion an appropriate remedy. Additionally, the Union maintains that according to Rhode Island case law it is within the arbitrator's authority to make determinations regarding whether a back pay award should be reduced by the amount of unemployment benefits received.
While the Union is correct in its assertion that an arbitrator may modify the penalty imposed by an employer under § 28-9-1, an arbitrator's award cannot be irrational. Irrational is defined as "not endowed with reason or understanding; lacking usual or normal mental clarity or coherence; not governed by or according to reason." Merriam Webster'sCollegiate Dictionary, 619 (10th ed. 1993). Here, there was ample evidence on the record showing that the Grievant did not work the hours that he was required to work as a maintenance mechanic/custodian for the East Providence School Department, even after there was an attempt to transfer Gregory to the day shift for the express purpose of mitigating this problem through greater supervision. At the arbitration hearing, Gregory testified to routinely taking two fifteen minute breaks around 5:00 pm and 9:00 pm and a half hour lunch break around 7:00 pm. Gregory further testified that he and other night workers established a routine of adding travel time to breaks, and a co-worker testified that adding travel time to breaks was a practice that was many years old, common among others in the workplace, stating "we all did this." Gregory stated that he had never been warned, reprimanded, or disciplined as a result of engaging in this practice.
Superintendent Taras Herbowy ("Herbowy") testified that at some point in 2002 he received several reports that the Grievant and another employee ("Pedulla") were absenting themselves from the workplace for long periods. In order to address this problem, the Superintendent testified that he decided to change the two maintenance mechanics to the day shift, because, in his judgment, "it would be best [for them] to work where others were present . . . and give them the opportunity to improve and do their job." On March 14, 2002, Director of Human Resources Lonnie Barham advised Union President Raymond Francis by letter that the Department would be changing the work hours of the Grievant and Pedulla because "[t]heir time and efforts [would] be more beneficial to the School Department if they are assigned to the day shift."
The Grievant and Pedulla proceeded to file a grievance protesting their transfer to the day shift, which was settled by returning the employees to the night shift and giving them compensation for the loss of their shift differential. At the hearing, Herbowy testified that in the course of settling the grievance he and the Deputy Superintendent met with the Grievant, Pedulla, Union President Francis, and Union Business Agent Jack Palazzo and told them that he suspected "theft of time," but that he was willing to settle the grievances if the two gave him assurances that they would "not take advantage of their [sic] being varied assignments in the workplace" and "not leave the work site for long hours." The Superintendent further testified he had spoken to the Grievant about this problem on two or three previous occasions, although the Grievant denied that any of these conversations occurred.
Additionally, it is undisputed that the school department hired a private investigation agency to conduct approximately two weeks' surveillance of Gregory in an effort to monitor Gregory's hours upon his return to the night shift. The surveillance which lasted from March 24, 2003 through April 9, 2003, revealed a consistent pattern of unauthorized absence from the workplace.[1] The investigator's report demonstrates that the Grievant failed to work his entire shift on six different days, with unauthorized absences ranging from 23 minutes to 1 hour and 53 minutes.
Due to Gregory's blatant abuse of time, the School Committee made the decision to terminate Gregory, in accordance with Article 26 of the CBA, which governs discipline, discharge and suspension of employees. Article 26 provides in pertinent part:
 26.1 . . . With respect to employees who have established their seniority, suspension, discharge or discipline of any such employee may be made only for just cause and in accordance with the following provisions: . . .
 26.2 (c) The employer agrees with the concept of progressive discipline and where appropriate, disciplinary action or measures shall include only the following
 1. Oral reprimand
 2. Written reprimand
 3. Suspension
 4. Demotion where appropriate
 5. Discharge
Progressive discipline is a remedial device designed to discourage and rehabilitate inappropriate conduct in the workplace. Under the CBA, progressive discipline, while generally applicable, is not absolute and should be used by the employer "where appropriate." Based on the record, it is clear to this Court that the School Committee had just cause for discharging Gregory without implementing each progression of the disciplinary provision. Moreover, this Court does not see discharge as an unreasonable or inappropriate action, when it is unquestionable that Gregory was aware of the school department's dissatisfaction with his repeated failures to comply with the time requirements of his work schedule. Additionally, Gregory refused to accept a shift transfer that would have resulted in greater supervision.
 "The rationale for termination without progressive discipline in [capital offense] cases is that the infraction is so obviously unacceptable that the employee should have known that it would not be tolerated. To condone egregious behavior by imposing a penalty less than termination would set a precedent for others to claim a right to reinstatement after such an infraction." Labor and Employment Arbitration Law Volume 9, Labor and Employment Arbitration § 230.02[3] (2004).
In the present case, it should have been obvious to the Grievant that not working the hours he was getting paid to work was equivalent to stealing time and that such behavior was a gross workplace infraction and therefore unacceptable. Theft of time and unauthorized absence from work is the type of intentional misconduct that destroys workplace morale and undermines a strong work ethic among employees. In light of the acceptance of Gregory's intentional misconduct by the arbitrator, there is no justification or rational explanation for reducing Gregory's discharge to a mere warning under the guise of the progressive discipline clause. Such drastic action does not draw its essence from the progressive discipline provision which specifically recognizes that a departure is warranted when appropriate circumstances exist.[2]
Additionally, even if the arbitrator was under the impression that termination was an excessive remedy in relation to the Grievant's misconduct, it is clear to this Court that the arbitrator fashioned a completely irrational remedy that monetarily rewards the Grievant for deceitful and intentional misconduct.
 "The purpose of remedy in disciplinary cases has been to rectify excesses by seeking to place the employee in the same position as that person would have occupied had the employer acted with just cause at the time the initial disciplinary action was taken. The goal, therefore, is to avoid a windfall to the employee while avoiding an added penalty on the employer." Labor and Employment Law Volume 9, Labor and Employment Arbitration § 230.03[1] (2004).
By reinstating the Grievant with back pay and failing to offset this award by the unemployment benefits the Grievant received preceding DET's decision, the arbitrator in the instant case effectively rewarded the Grievant with an award of greater compensation than if he simply worked in accordance with his schedule. This Court refuses to uphold an arbitrator's decision that sends the misguided message that an employee can repeatedly cheat his employer regarding time spent at work — and be monetarily rewarded for this deceitful conduct. The irrationality of the award is evident — dishonesty pays in greater measure than honesty.
In Zuromski v. Providence School Committee, 520 A.2d 137, 138 (R.I. 1987), the Rhode Island Supreme Court had the opportunity to review an arbitration award which awarded teachers reinstatement with back pay, but offset that amount by the unemployment compensation benefits that the teachers had received during the layoff period. On appeal the teachers argued that unemployment benefits should not be deducted and/or restored to the city of Providence since the compensation constitutes a collateral benefit. Id. at 138. Our Supreme Court rejected the teachers' argument and affirmed the arbitration award, noting that "it is undisputed that the city of Providence pays dollar-for-dollar for unemployment compensation paid to teachers who are in layoff status" and to give teachers back pay without deducting such compensation would have resulted in "`double recovery.'" Id. at 138-39. The Court went on to state:
 "Since [the arbitrator's] award had made provision for compensation to the teachers of all collateral losses, as well as full back pay, there was no justification for adding to the award what would have amounted to a windfall in unemployment compensation benefits for which the city of Providence was totally responsible." Id. at 139.
Similarly, in the East Providence School Department, when unemployment compensation is paid to an employee, DET pays the employee the unemployment compensation, and then it bills the East Providence School Department, dollar-for-dollar, for reimbursement. Consequently, under the arbitrator's award the School Department is forced to incur greater costs and is, in fact, penalized in its efforts to discipline the Grievant. This penalty is not contemplated by the contract. This Court can find no rational justification for such an outcome, and the concept of progressive discipline, as contained in the CBA, does not justify the arbitrator's remedy.
Moreover, this Court finds the Union's reliance on Rhode Island Council94 v. State, 456 A.2d 771 (R.I. 1983), unpersuasive. In that case, our Supreme Court affirmed an arbitration award in which the arbitrator did not reduce the amount of back pay awarded to a state employee whom he determined to have been improperly discharged by the amount of unemployment compensation benefits received. Our Rhode Island Supreme Court declared in Zuromski:
 "[The] determination in Council 94, supra, was based almost entirely upon the limited scope of judicial review applicable to arbitration awards. Consequently, the issue in reviewing an arbitrator's award is not whether the arbitrator was correct in his determination and application of legal principles but whether the result was `completely irrational.'" (citations omitted). 520 A.2d at 138.
This Court finds that the arbitrator's remedy is completely irrational and fails to draw its essence from the progressive discipline provision in the CBA. The written warning and monetary windfall suggested by the arbitrator is not appropriate where Gregory had received prior oral and written warnings, resisted an obvious attempt by the school department to more closely supervise him, and continued to exhibit premeditated, deceitful and gross misconduct on a repeated basis. Discharge is the appropriate disciplinary measure for this dishonest and recalcitrant employee.
 CONCLUSION
The arbitration award in this matter is vacated and the discharge of Gregory is reinstated.
Counsel shall prepare a judgment in conformity with this decision.
[1] The surveillance which was conducted on six different dates between March 24, 2003 and April 9, 2003, indicates that Gregory's total time of unauthorized absences during this period was 5.31 hours. Gregory was paid for all of these hours based on the employer's reasonable assumption that Gregory was working rather than making trips to Dunkin Donuts and other destinations.
[2] Article 4 of the CBA, the provision governing management rights, provides in pertinent part:
 "The School Committee hereby retains and reserves unto itself all rights, power, authority, duty and responsibility confirmed and vested in it by any Federal or State Laws. The exercise of any such right, power, authority, duty or responsibility by the School Committee and the adoption of such rules, regulations and policies as it may deem necessary and as they apply to employees represented by the Union, shall be limited only by specific and express terms of this agreement."
Based on the clear and unambiguous language of Article 4 and Article 26, it is apparent that the School Committee reserves the right to discharge an employee for misconduct without going through each step of progressive discipline outlined in Article 26.