**Not For Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 22-1320

FRED MELNYK,

Plaintiff, Appellant,

v.

TOWN OF LITTLE COMPTON, by and through its Treasurer, Mary-Jane
Harrington, in her official capacity; RICHARD PETRIN,
individually; ROBERT MUSHEN, individually,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary J. McElroy]

Before

Montecalvo and Thompson, <u>Circuit Judges</u>,
and Carreño-Coll,* <u>District Judge</u>.

<u>Sonja Linnea Deyoe</u>, with whom <u>Law Offices of Sonja Deyoe</u> was
on brief, for appellant.
<u>Andrew F. Staub</u>, with whom <u>Mark T. Reynolds</u> and <u>Reynolds,
DeMarco & Boland, Ltd.</u> were on brief, for appellees.

August 21, 2023

---

* Of the District of Puerto Rico, sitting by designation.

**MONTECALVO, Circuit Judge.** In March 2019, Fred Melnyk, Jr., was terminated from his position as a firefighter with the Town of Little Compton (the "Town"). His termination followed a series of disputes with his employers and co-workers and a nearly nine-month period of administrative leave.

Melnyk's disputes relating to this lawsuit began in fall 2017 when he was passed over for a promotion to lieutenant. Melnyk filed two grievances relating to the promotion process, asserting that the interview process did not comport with the collective bargaining agreement (the "CBA") between Melnyk's union -- the International Association of Fire Fighters, AFL-CIO, Local 3957 (the "Union") -- and the Town. The Town's Fire Chief, Richard Petrin, opted to reconduct the interview process to correct any flaws in the promotion process, but Melnyk still was not selected for a promotion to lieutenant at the Town Council's meeting in February 2018.

About a month later, Melnyk was involved in a confrontation and physical altercation with another firefighter. In response, Melnyk pressed charges against his fellow firefighter for simple assault and battery. A few days later, while at work, two other firefighters confronted Melnyk for pressing charges, and, shortly after the confrontation, Melnyk experienced chest pains and was taken to the hospital. After discharge, Melnyk's

physician advised the Town that Melnyk could not return to work. On April 13, 2018, Melnyk was put on administrative leave.

Melnyk then filed a grievance about the incident seeking injured-on-duty ("IOD") benefits. The Union represented Melnyk in his IOD grievance proceedings. After initially demanding arbitration, the Union agreed to an alternative dispute resolution process set forth in a Memorandum of Understanding ("MOA") between the Union and the Town. The process in the MOA varied slightly from what would have occurred under the CBA. Under the MOA, if Melnyk's physician and the Town's physician could not agree about the source of Melnyk's condition, the two physicians would select a neutral third physician to break the tie. The neutral third physician's opinion would be binding. By contrast, the CBA procedures provide that if Melnyk's physician and the Town's physician could not agree about the source of Melnyk's condition, then the Town and the Union would mutually select a neutral third physician.

But when Melnyk's physician and the Town's physician could not agree about the source of his condition, the Town and the Union executed an amendment to the MOA that brought the process in line with that of the CBA. The amendment provided that because "both [Melnyk's and the Town's] physicians are not willing to attest to the acceptability of a third physician," the parties would follow the CBA, together selecting "a third physician

- 3 -

agreeable to both [the T]own and [the U]nion." A third physician was selected by the Town and the Union, and he opined that Melnyk's condition was not job-related. Consequently, Melnyk was assessed sick time for time missed. In March 2019, having exhausted his remaining leave time and being unable to return to his duties, Melnyk was terminated.

Following his termination, Melnyk brought this action against the Town, Chief Petrin, and Town Council President Robert Mushen (collectively, the "defendants"), alleging breach of the MOA, its amendment, and the implied covenant of good faith and fair dealing; violations of his First Amendment right to free speech; and retaliation against him in violation of the Rhode Island Whistleblowers' Protection Act, R.I. Gen. Laws § 28-50-1. His claims rest not only on his termination, but also on the series of events leading up to his termination. The district court granted summary judgment to the defendants on all claims. Melnyk has appealed, arguing that genuine disputes of material fact preclude summary judgment in favor of the defendants on each claim.

We review the grant of summary judgment de novo. González-Arroyo v. Drs.' Ctr. Hosp. Bayamón, Inc., 54 F.4th 7, 17 (1st Cir. 2022). After careful review of the record and the arguments Melnyk makes on appeal, we affirm. We have oft stated "that when a trial court accurately takes the measure of a case, persuasively explains its reasoning, and reaches a correct result,

- 4 -

it serves no useful purpose for a reviewing court to write at length in placing its seal of approval on the decision below." Moses v. Mele, 711 F.3d 213, 216 (1st Cir. 2013) (collecting cases). Such is this case. We therefore affirm the entry of summary judgment substantially for the reasons elucidated in the district court's Memorandum & Order, adding a few comments addressing Melnyk's arguments before us.

Melnyk first argues that the defendants breached the MOA, the MOA's amendment, and the implied covenant of good faith and fair dealing. He asserts that he was the intended third-party beneficiary of the MOA and thus was damaged by the defendants' alleged breach. We need not decide if Melnyk was the third-party beneficiary of the contract because, even assuming he was, there was no breach of the MOA or its amendment. The gravamen of Melnyk's breach-of-contract claim is that the Town's physician never rendered an opinion, but the defendants nevertheless manipulated the grievance process so that it could select the third physician whose opinion would be binding. But Melnyk's assertion that the Town's physician never rendered an opinion cannot stand when it is plainly contradicted by the record. When pressed by the Town for a written opinion, its physician responded "my opinion is that [Melnyk's injury] is not job-related. Just send [the Town Fire Department] a copy of my note."

Melnyk appears to take issue with the form of the opinion rendered by the Town's physician, highlighting how the physician's treatment notes from Melnyk's exam say nothing about whether Melnyk's ailment was job-related. The MOA, however, does not dictate the form of the physician's opinion or prohibit the Town's physician from rendering his opinion after, rather than contemporaneously with, Melnyk's office visit. Moreover, both the Town and the Union agreed that the note from the Town's physician was satisfactory and triggered the need for a third opinion. At bottom, Melnyk has not put forth any evidence to show that the note from the Town's physician did not mean what it said -- his "opinion is that [Melnyk's injury] [was] not job-related." As such, there is no genuine issue of material fact as to whether the defendants breached the MOA by not obtaining an opinion from the Town's physician.

Melnyk also contends that the defendants breached the MOA by failing to contact his physician and the Town's physician to select a neutral third physician. Even setting aside the documentary evidence demonstrating that the Town's physician was contacted but refused to participate in the process, Melnyk's claim fails because both the Union and the Town agreed to modify the MOA and supersede the requirement for the two physicians to confer and

select a third physician.[1]  The Union and the Town then abided by the modified MOA, meaning there was no breach.  The defendants thus are entitled to summary judgment on Melnyk's breach-of-contract claim.

Because Melnyk's claim that the defendants breached the implied covenant of good faith and fair dealing is premised upon his failed breach-of-contract claim, the inability to proceed on his breach-of-contract claim dooms his implied-covenant claim as well.  See A. A. A. Pool Serv. & Supply, Inc. v. Aetna Cas. & Sur. Co., 395 A.2d 724, 726 (R.I. 1978) (explaining that in Rhode Island a claim of a breach of the implied covenant of good faith and fair dealing does not give rise to an independent tort action but rather sounds in breach of contract); EDC Inv., LLC v. UTGR, Inc., 275 A.3d 537, 545 (R.I. 2022) (noting that in Rhode Island "the implied covenant of good faith and fair dealing does not create an independent cause of action, but must be connected to a breach-of-contract claim" (quoting Premier Home Restoration, LLC v. Fed. Nat'l Mortg. Ass'n, 245 A.3d 745, 750 (R.I. 2021)) (internal quotation marks omitted)).

---

[1] To the extent that Melnyk is dissatisfied with the Union's decision to enter the MOA and then modify the MOA, such a claim for a breach of the duty of fair representation in the grievance process would lie against the Union.  See, e.g., Lee v. R.I. Council 94, 796 A.2d 1080, 1083-84 (R.I. 2002) (per curiam) (describing a union's duty of fair representation towards employees in grievance procedures in Rhode Island).  We pass no judgment on the merits of such a claim.

Melnyk next argues that his claim that the defendants retaliated against him in violation of the First Amendment should survive summary judgment because he made two statements regarding matters of public concern: (1) those regarding the lieutenant promotion process and (2) those in his report to the police regarding the alleged assault by another firefighter. The district court correctly concluded that the record established both comments were Melnyk's personal concerns, rather than matters of public concern.

Although on appeal Melnyk asserts that there was "no [personal] reason for him to challenge the [lieutenant] promotions as the Town could promote both other members to [l]ieutenant without promoting [Melnyk]," this unsupported contention is belied by the record. Specifically, in his November 2, 2017 grievance complaining about the flawed promotion process, Melnyk requested that he be awarded the promotion. And in his subsequent November 21, 2017 grievance, he again mentions how "[he] has been harmed." Accordingly, we agree with the district court that Melnyk's statements regarding the promotion process reflected personal workplace issues that are unprotected by the First Amendment -- even if his speech tangentially raised concerns about a purportedly corrupt interview process. See Mullin v. Town of Fairhaven, 284 F.3d 31, 38 (1st Cir. 2002) ("[S]peech found to be motivated by a purely personal issue did not implicate matter of

- 8 -

public concern, notwithstanding attenuated connection of speech to incident raising Fourth Amendment concerns." (citing Alinovi v. Worcester Sch. Comm., 777 F.2d 776, 787 (1st Cir. 1985))).

Melnyk's assertions regarding the public safety concerns raised in the police report similarly founder. There simply is nothing in the record to suggest that his statement about the incident was anything more than a typical assault report seeking assistance in the aftermath of the confrontation. See Gordon v. City of New York, 612 F. App'x 629, 631 (2d Cir. 2015) ("[T]he content, form, and context of [plaintiff's] police report -- a request for help in the immediate aftermath of an attack -- lead to the conclusion that the report was personal in nature and generally related to [plaintiff's] own situation, not an effort to . . . bring [concerns] to [the] public['s] attention." (internal quotation marks and citation omitted)).

Lastly, Melnyk raises a host of arguments as to why the district court erred in granting the defendants summary judgment on his whistleblower retaliation claim, most of which attempt to explain why Melnyk has established a prima facie case of whistleblower retaliation. But the district court concluded that even if Melnyk could establish a prima facie case of whistleblower retaliation, his claim failed because he had not shown that the Town's nondiscriminatory reasons for each purported adverse action were merely pretextual. His limited attempt to establish pretext

by ascribing a nefarious intent to the defendants is unavailing. His assertions that the defendants "deliberately altered" the opinion of the Town's physicians and had "suspicious reasons" for changing the IOD grievance process lack support in the record and thus amount to nothing more than the mere speculation and conjecture that we have repeatedly held cannot create a genuine dispute of material fact. See, e.g., Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 398 (1st Cir. 2012) ("Assumptions are not a substitute for evidence."); Vives v. Fajardo, 472 F.3d 19, 21 (1st Cir. 2007) ("Even in retaliation cases, 'where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" (quoting Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003))); Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301-04 (1st Cir. 2014) (purely speculative claims that explanations of adverse actions were pretextual insufficient to defeat summary judgment); see also U.S. ex rel. Hamrick v. GlaxoSmithKline LLC, 814 F.3d 10, 22 (1st Cir. 2016) ("[E]vidence of departure from standard procedure [is] insufficient to create jury question where 'the record discloses no shifting explanations for deviations from protocol or improbable "coincidences."'" (quoting Abril-Rivera v. Johnson, 806 F.3d 599, 610 (1st Cir. 2015))).

While we have not mentioned all Melnyk's arguments, we have carefully considered each of them. For the reasons stated above and those given in the district court's opinion, we affirm the district court's grant of summary judgment to the defendants on all claims.