# United States Court of Appeals

## For the First Circuit

No. 00-2355

WILLIAM MULLIN, ANTONIO LOPES,
DAVID GAMMONS, and WILLIAM MARKEY,

Plaintiffs, Appellants,

v.

TOWN OF FAIRHAVEN, JOHN T. HAALAND,
and BRYAN WOOD,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and Stearns,* District Judge.

Harvey A. Schwartz, with whom Kimberly H. Scheckner and
Rodgers, Powers & Schwartz were on brief for appellants.
John J. Cloherty, III, with whom John J. Davis and Pierce,
Davis, & Perritano, LLP were on brief for appellees.

* Of the District of Massachusetts, sitting by designation.

March 19, 2002

**LIPEZ, <u>Circuit Judge</u>**.  This case requires us to apply First Amendment law to the decision of a town to remove for cause appointed local officials unwilling to comply with the directive of the Board of Selectmen that they rescind a vote.  Plaintiffs claim that the Board of Selectmen of the Town of Fairhaven violated their First Amendment rights when it removed them from the Town's Conservation Commission for the exercise of their votes to replace the Chair and co-Chair of the Commission.  Upon the close of plaintiffs' evidence at a bench trial, the district court found no First Amendment violation and entered judgment in favor of the Town of Fairhaven and two members of the Board of Selectmen (collectively "defendants").  This appeal ensued.  We affirm.

**I.**

**A.  The Controversy**

The Town of Fairhaven Conservation Commission ("Commission") consists of seven members appointed by the Board of Selectmen ("Board") for an unpaid term of three years.  The plaintiffs in this action -- William Mullin, Antone Lopes, David Gammons, and William Markey (collectively "plaintiffs") -- were four of the seven members serving on the Commission in 1997.

The Town bylaw establishing the Commission mandates that "[t]he Commission shall elect by majority vote from among the members a Chair and Co-Chair, each for a term of one (1) year." The Commission customarily holds its annual elections on the same day as the Town meeting.  Accordingly, in June 1997, the Commission

conducted its annual elections following the Town meeting, naming Marinus Vander Pol as Chair and Winfred Eckenreiter as co-Chair. Prior to the June 1997 elections, Mullin had been serving as Commission Chair.

At a Commission meeting held on October 20, 1997, only four months into the one-year term of the new Chair and co-Chair, Mullin moved to reorganize the Commission. Markey seconded Mullin's motion. Vander Pol, who understood the bylaws to prescribe a one-year term, stated that the Commission would vote on Mullin's motion, whether a reorganization would be "lawful or not." Although the Commission's annual chairmanship elections are typically included on the meeting agenda, the October 1997 mid-term reorganization was not on the agenda.

Co-Chair Eckenreiter was absent from the October 20 meeting. The six other members were present. The motion to reorganize passed by a 3 to 2 margin, with one abstention by Gammons, who abstained from voting because of Eckenreiter's absence. Mullin and Markey nominated each other for the positions of Chair and Co-Chair respectively.[1] The Commission then voted Mullin as Chair and Markey as co-Chair.

The mid-term reorganization prompted the Board of Selectmen to consult the Town Counsel, who advised in an opinion

---

[1] Vander Pol declined a nomination as Chair for the reorganization vote. We do not interpret this as an endorsement of the mid-term reorganization, particularly in light of Vander Pol's expressed doubts as to whether the move to reorganize mid-term was "lawful or not."

letter that the Commission did not have legal authority to remove the Chair and co-Chair from their positions mid-term:

> The Town by-laws provide that "[t]he [Conservation] Commission shall elect by majority vote from among the members a Chair and Co-Chair, each for a term of one (1) year." Town by-laws, c.8, §8-1. There is no provision in the by-laws or in any other applicable law authorizing the Commission to remove either the chairman or the co-chairman from that office prior to the expiration of his one-year term. General law c.40 §8C which provides for the appointment of Conservation Commissions is silent on this issue.
>
> Under similar provisions the Massachusetts courts have held that an appointing authority does not have the authority to remove an appointee from office during his term unless that authority is expressly stated in the general laws. I am aware of no reason that the same law of construction should not apply to a town by-law.
>
> Accordingly, it is my opinion that under these circumstances the Conservation Commission did not have legal authority to remove the chairman and co-chairman from their respective positions.

On November 5, 1997, the Board sent identical letters to each of the seven Commission members, notifying them that their October 20, 1997, reorganization violated the Town's bylaw, and enclosing a copy of Town Counsel's opinion letter and the relevant Town bylaw. In the letters, the Board indicated that they had voted two to one to require the Commission to rescind as illegal this reorganization at its next meeting.[2] The letter also advised

---

[2] The plaintiffs highlight the fact that the letter directed the Commission to "rescind" the reorganization rather than "reconsider" the reorganization, as was apparently voted by the Selectmen. The district court determined (and we agree) that it is immaterial whether the word "rescind" or "reconsider" was used: "We

-4-

that failure to rescind would "lead to additional action by the Board of Selectmen."

Prior to the transmittal of these letters, a curious event transpired at the Commission meeting held on November 3, 1997, which commenced with Mullin and Markey sitting as Chair and co-Chair. Deposed co-Chair Eckenreiter moved to reorganize the Commission again. Gammons and Lopes were absent from this meeting; all other Commission members were present. The motion to reorganize again was unanimously passed by all members present, including Mullin and Markey. Eckenreiter nominated Vander Pol as Chair, his nomination was seconded, and the Commission members unanimously elected Vander Pol as Chair.

After the meeting adjourned, Mullin decided that this latest reorganization had no binding effect because he believed it had been initiated by Eckenreiter only to prove the point that the Commission could "do this back and forth" every week if mid-term reorganizations were valid. Thus, at the subsequent Commission meeting on November 17, 1997, Mullin and Markey disregarded the November 3 reorganization and reassumed the positions of Chair and co-Chair. At that meeting, in response to the November 5 letter by the Selectmen, Mullin moved that the Commission reconsider the October 20 reorganization "subject to a second legal opinion" to be obtained at Town expense. Eckenreiter then moved to rescind the October 20 reorganization. The motion to rescind failed by a vote

get a motion for reconsideration all the time here but what people are really asking us to do is rescind what we have done and do something different, not just think about it again."

-5-

of three in favor to four opposed.  Plaintiffs were the four members who refused to rescind the October 20 reorganization,[3] despite having been advised of its illegality of the reorganization.[4]

In response to plaintiffs' refusal to rescind the allegedly unlawful reorganization, the Board informed them in separate letters dated December 1, 1997, that it would hold a hearing to determine whether to remove plaintiffs from their positions on the Commission, in accordance with the Town bylaws. Under these bylaws, Commission members "may be removed [for cause] by [the] Board pursuant to the provisions of [Mass. Gen. Laws ch.] 40, § 8C." Section 8C provides that an individual appointed to the Conservation Commission "may, after a public hearing, be removed for cause by the appointing authority."  Mass. Gen. Laws ch. 40, § 8C.  The letters indicated the Board's intention to consider "any or all of the following as possible grounds for removal" of plaintiffs:

> [Their] recent participation in the removal
> of the chairman and co-chairman of the
> Commission despite their election, pursuant
> to Town By-Law c. 8, section 8-1, to a one

---

[3] Although Gammons had originally abstained from the October reorganization, he voted against the motion to rescind the reorganization.  Gammons contended at trial that he did not feel he could rescind his prior vote because he had previously abstained. On cross-examination, however, he acknowledged that he knew he could abstain again on the motion to rescind the reorganization if the prior abstention was his concern.

[4] Selectman Haaland had telephoned Mullin prior to the November 17 meeting to request that Mullin simply wait six months until the annual Chairmanship elections in order to take over as Chair of the Commission.  Mullin refused Haaland's request.

-6-

> year term to those positions on June 30, 1997.
>
> [Their] improper denial of an order of conditions for a project (30 Fisherman Road) without supporting facts, and on grounds not allowed under the Wetlands Protection Act.

The letters to Mullin and Markey also referenced their "recent participation, and apparent organization, of an appeal for a superseding order from an order approved by the Commission for the AT&T project." In addition, Mullin was notified that his "apparent failure to comply with the Wetlands Protection Act" at his home at 27 Silvershell Beach could also be considered as a possible basis for his removal.

On December 22, 1997, the Board conducted the removal hearing (at which plaintiffs were represented by counsel) and voted to remove plaintiffs from the Commission. As cause therefor, the Board stated that it had "less than complete confidence in [their] competency and efficiency in [their] positions based upon the record in this matter."

## B. The Trial

On January 6, 1998, plaintiffs brought an action in federal district court pursuant to 42 U.S.C. § 1983 against defendants Town of Fairhaven and John T. Haaland and Bryan Wood (individually and in their capacity as members of the Fairhaven Board of Selectmen),[5] alleging violations of the First and

---

[5] Plaintiffs sued only two of the three Selectmen on the Board, apparently because those two voted to remove plaintiffs from the Commission, although there was no direct evidence submitted as to how each Selectman voted.

Fourteenth Amendments.  Plaintiffs sought damages and equitable relief for their alleged wrongful removal from the Commission. Specifically, plaintiffs sought (1) a preliminary injunction enjoining defendants from appointing replacement members to the Commission and (2) a permanent injunction requiring their reinstatement to the Commission.  The district court refused to grant the preliminary injunction.  All parties then moved for summary judgment, and all motions were denied.

A bench trial commenced on August 15, 2000.  At the close of plaintiffs' evidence, the district court, upon defendants' motion, entered judgment for defendants, stating inter alia, that:

> [U]nder any circumstance I think the Board of Selectmen had the authority to give fair warning that they felt that the bylaws are being violated.  They gave an opinion of counsel to that effect.  And the Commission persisted in its position.  And I think that that justified a removal for cause which was within the authority of the Board of Selectmen.  So I am going to allow the motion.

This appeal followed.

## II.

The trial court's decision, issued at the close of plaintiffs' case in a bench trial, was a judgment as a matter of law on partial findings under Fed. R. Civ. P. 52(c).[6]  See N.E.

---

[6]  Rule 52(c) provides in relevant part:

Judgment on Partial Findings.  If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a

-8-

Drilling, Inc. v. Inner Space Servs., Inc., 243 F.3d 25, 37 (1st Cir. 2001) (characterizing defendant's motion for judgment at close of plaintiff's case at bench trial as motion for judgment on partial findings, rather than as a motion for judgment as a matter of law under Fed. R. Civ. P. 50(c), which is applicable only in jury trials); Palmacci v. Umpierrez, 121 F.3d 781, 785 & n.1 (1st Cir. 1997) (same). In our review of Rule 52(c) judgments, we evaluate the district court's conclusions of law de novo, see Rego v. ARC Water Treatment Co., 181 F.3d 396, 400 (3d Cir. 1999), and typically examine the district court's underlying findings of fact for "clear error," United States v. Davis, 261 F.3d 1, 57 (1st Cir. 2001).

However, where First Amendment interests are implicated, our review must be more searching. "[I]n cases raising First Amendment issues . . . an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" Bose v. Consumers Union, 466 U.S. 485, 499 (1984) (quoting New York Times v. Sullivan, 376 U.S. 254, 284-86 (1964)). See also O'Connor v. Steeves, 994 F.2d 905, 912-13 (1st Cir. 1993). We conduct our review accordingly.

favorable finding on that issue . . . .

Fed. R. Civ. P. 52(c).

**III.**

We have extended First Amendment protection to votes on "controversial public issue[s]" cast by "a member of a public agency or board." Miller v. Town of Hull, 878 F.2d 523, 532 (1st Cir. 1989) ("There can be no more definite expression of opinion than by voting on a controversial public issue."); see also Stella v. Kelley, 63 F.3d 71, 75-76 (1st Cir. 1995). This protection is far from absolute, however. In their capacity as public officials voting on matters of public concern, plaintiffs retain First Amendment protection "so long as [their] speech does not unduly impede the government's interest . . . in the efficient performance of the public service it delivers through" its appointed officials. O'Connor, 994 F.2d at 912 (citing cases). Accordingly, to determine the scope of First Amendment free speech protections applicable to public officials, we have employed a three-part test extracted largely from two Supreme Court opinions, Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977), and Pickering v. Bd. of Educ., 391 U.S. 563 (1968). See Tang v. R.I. Dep't of Elderly Affairs, 163 F.3d 7, 12 (1st Cir. 1998) (setting forth three-part test); O'Connor, 994 F.2d at 912-13 (same).

First, we must determine whether the speech at issue involves "matters of public concern." Connick v. Myers, 461 U.S. 138, 147-48 (1983). If it does not, then its First Amendment value is low, and a "federal court is not the appropriate forum in which to review the wisdom" of internal decisions arising therefrom. Id. at 147. Second, if the speech does pertain to matters of public

concern, the court must, under the Supreme Court's decision in Pickering, balance the strength of plaintiffs' and the public's First Amendment interests against "the strength of the countervailing governmental interest in promoting efficient performance of the public service the government agency or entity must provide through" its public officials. O'Connor, 994 F.2d at 912 (citing Pickering, 391 U.S. at 568). Albeit not an exact science, Pickering balancing "is necessary in order to accommodate the dual role of the public employer as a provider of public services and as a government entity operating under the constraints of the First Amendment."[7] Rankin v. McPherson, 483 U.S. 378, 384 (1987). Because these first two prongs involve assessing whether plaintiffs' votes "'are of a character which the principles of the First Amendment . . . protect,' these determinations are always subject to de novo review." O'Connor, 994 F.2d at 912 (quoting Connick, 461 U.S. at 150 n.10) (internal citation omitted).

Third, and finally, if First Amendment interests outweigh a legitimate government interest in curtailing the speech under the Pickering balancing test, plaintiffs must then show that the protected expression was a substantial or motivating factor in the decision to remove them from their posts on the Commission. See Mt. Healthy, 429 U.S. at 287. If plaintiffs can make this showing,

---

[7] We are aware that the Board, acting as an appointing body, is not a "public employer" in a literal sense. We see no reason, however, why First Amendment jurisprudence in the public-employer context should not apply with equal force to the Board's removal of appointed, unpaid public officials. See, e.g., Miller, 878 F.2d at 531-33; Stella, 63 F.3d at 74-75.

the burden of persuasion shifts to defendants who must then prove by a preponderance of the evidence that plaintiffs would have been removed "even in the absence of the protected conduct." Id. "[C]learly erroneous" review is appropriate on this third-step inquiry. Duffy v. Sarault, 892 F.2d 139, 145-46 (1st Cir. 1989); see also O'Connor, 994 F.2d at 913.

## IV.

Invoking First Amendment protections, plaintiffs claim that the Board removed them from the Commission on the basis of the mid-term reorganization, as well as other issues alluded to in the November 3 notice of the removal hearing as "possible grounds" for their removal. Notwithstanding the inclusion of these other issues in the November 3 notice, however, there was no evidence introduced at trial that the Selectmen actually considered these other grounds as bases for its removal decision. The district court, as fact-finder, found that the unlawful mid-term reorganization was the basis for plaintiffs' removal, specifically finding that plaintiffs' insistence on the mid-term reorganization in violation of the Town bylaws "justified a removal for cause which was within the authority of the Board of Selectmen." This conclusion about the basis for the removal of the plaintiffs is not clearly erroneous. See Duffy, 892 F.2d at 146-47 (reviewing district court's Mt. Healthy causation determinations for clear error). We therefore apply our First Amendment analysis to that ground for removal.

## A.  Matters of Public Concern

The Supreme Court has held that "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record."  Connick, 461 U.S. at 147-48.  That determination may require an inquiry into the employee's motive for the speech.  See, e.g., Alinovi v. Worcester Sch. Comm., 777 F.2d 776, 787 (1st Cir. 1985) (concluding that speech found to be motivated by a purely personal issue did not implicate matter of public concern, notwithstanding attenuated connection of speech to incident raising Fourth Amendment concerns).  In that endeavor, we examine the extent to which plaintiffs intended their speech to contribute to any "public discourse," or if it simply reflected personal or internal Commission concerns.  O'Connor, 994 F.2d at 914.

Here, the district court perceived the reorganization as primarily a power-grab by plaintiffs, stating in the midst of plaintiffs' case, "you've got people that want someone else in power . . . that's not First Amendment."  Some elements of the record certainly support the district court's view that the reorganization was simply a grab for power: the reorganization took place without notice at the end of a meeting, and absent members could not and were not polled as to their views.  However, the district court's observation, and this evidence, speak to how plaintiffs conducted the reorganization vote and not to their motives, at least not directly.

-13-

Our independent examination of the record instead reveals a mix of motives at play. O'Connor, 994 F.2d at 912 (mandating de novo review of public-concern determinations, given importance of First Amendment values involved). The friction between plaintiffs and Vander Pol sprang in part from a clash of personal styles and from disagreements over the internal policies and workings of the Commission -- such as the maintenance of files and the manner in which a secretary was hired -- all matters of little concern to the public. See Connick, 461 U.S. at 149 ("[T]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs."); Curtis v. Okla. City Pub. Schs. Bd. of Educ., 147 F.3d 1200, 1212 (10th Cir. 1998) ("Speech concerning individual personnel disputes or internal policies will typically not involve public concern."). At the same time, plaintiffs claimed dissatisfaction with Vander Pol's leadership because of his views on controversial public issues before the Commission.

Moreover, beyond the question of motive, the speech at issue is a vote, not simply the expression of a point of view on a controversial issue. That vote had tangible consequences for the community in terms of the Commission's leadership. Given the responsibility of the Commission "for the promotion and development of the Town's natural resources and for the protection of watershed resources," Mass. Gen. Laws ch. 40, § 8C, there is a significant public dimension to the votes cast for its Chair and co-Chair. As with any local board, agency or commission, its leaders bear

-14-

primary responsibility for the articulation of policy to the public and other government entities. Accordingly, in view of the responsibilities of the Commission, the important roles of its Chair and co-Chair, and the public issues that contributed to the dissension on the Commission, we conclude that the vote at issue here involves a matter of public concern.

## B.  **Pickering Balancing Test**

Under the Pickering test, we must balance the First Amendment interests at stake against the Town's "legitimate interests in preventing unnecessary disruptions and inefficiencies in carrying out [the Commission's] public service mission." O'Connor, 994 F.2d at 915 (citing Pickering, 391 U.S. at 568-75).

### 1.  Plaintiffs' Interests

In evaluating the strength of plaintiffs' First Amendment interests, we must again consider the motives behind plaintiffs' efforts to reorganize the Commission mid-term. See id. ("[I]nsofar as self-interest is found to have motivated [plaintiffs'] speech, [their] expression is entitled to less weight in the Pickering balancing than speech on matters of public concern intended to serve the public interest."). Although we have acknowledged the public concern implicated by the vote to reorganize, we also find the import of that concern diminished by plaintiffs' preoccupation with personal disagreements and internal disputes over the workings of the Commission. Also, so far as we can tell from the record, there was little or no effort by plaintiffs to involve the public in a debate over the reorganization of the Commission. The plan to

-15-

conduct the reorganization vote was not even noted on the agenda for the meeting.  Plaintiffs are hard pressed to elevate the First Amendment stakes by invoking the interests of the community in a public discourse that they appear to have done so little to foster.

2.  Town's Interests

We have noted that the government has a "greater interest in curtailing erroneous statements, than correct ones."  Brasslett v. Cota, 761 F.2d 827, 839 (1st Cir. 1985).  Here, the Town undoubtedly has a vital interest in enforcing compliance with its bylaws, which plaintiffs had sworn to uphold.  Indeed, the district court recognized these interests in its bench ruling for the defendants:

> The evidence that we have had so far, my analysis of it is that . . . the Commission had no authority to "reorganize."  They had no authority to remove the chairman and [co-Chair] midstream.  They could have made that move in July at the annual visit of that, to that issue or they could have waited in eight months and done it the next July.  But there has been nothing presented to me that indicates that there is any authority for them to change the term once it has been set.  With respect to the Board of Selectmen, I think that they were within their authority to advise the committee that they were violating the law and to tell them to rescind, whether you call it rescinding or reconsideration. . . .  And under any circumstance I think the Board of Selectmen had the authority to give fair warning that they felt that the bylaws were being violated.  They gave an opinion of counsel to that effect.  And the Commission persisted in its position.  And I think that that justified a removal for cause which was within the authority of the Board of Selectmen.  So I am going to allow the motion.

We agree with the district court that the Board had a sound legal basis for its determination that the mid-term

reorganization was not authorized by law.[8]  The Town bylaws provide that the Commission "shall elect by majority vote from among the members a Chair and co-Chair, each for a term of one (1) year." Town Counsel, as noted in his opinion letter, found no legal authority permitting the Commission to remove either the Chair or co-Chair prior to the expiration of such one-year term.  Nor could plaintiffs cite any such authority.  At trial, plaintiffs relied upon Robert's Rules of Order which, under Town bylaws, govern town business meetings "so far as they are applicable and not inconsistent" with the bylaws.  Plaintiffs specifically cited to Section 60 which states in part:

> Remedies Against Misconduct or Dereliction of Duty in Office
> . . . .
> [A]ny regularly elected officer of a permanent society can be deposed from office for cause -- that is, misconduct or neglect of duty in office -- as follows:  . . . If . . . the bylaws provide that officers shall serve only a fixed term . . . an officer can be deposed from office only by following the procedures for dealing with offenses by members outside a meeting; that is, an investigating committee must be appointed, it must prefer charges, and a formal trial must be held.

Gen. Henry M. Robert, Robert's Rules of Order § 60, at 656-57 (9th ed. 1990).

As the district court noted, this reliance on § 60 is misplaced for two reasons.  First, the record does not demonstrate

---

[8]  To be sure, we are not called upon here in our Pickering balancing inquiry to decide definitively the merits of the Board's ruling on the illegality of the mid-term reorganization.  Rather, we must decide the more limited issue of whether the Board had a sound legal basis for that ruling, thereby justifying its insistence on compliance.

the "misconduct or dereliction of duty" necessary to trigger these remedies on the part of Vander Pol or Eckenreiter. Further, even if such circumstances were present, plaintiffs did not follow the requisite § 60 procedure. In the absence of other supporting authority for their actions, plaintiffs thus fail to raise any colorable dispute about the illegality of the mid-term reorganization challenged by the Board.[9]

In addition, the record reveals the inefficiencies created by the unlawful mid-term reorganization. At the Commission meeting held on November 3, 1997, after the mid-term reorganization took place, deposed co-Chair Eckenreiter moved again to reorganize. His motion was passed unanimously, and Vander Pol was unanimously elected to reassume his position as Chair (though Mullin later disregarded the reorganization). This November 3 reorganization was initiated by Eckenreiter only to prove the point that the Commission could "do this back and forth every week" if mid-term reorganizations were indeed valid. Reorganizing outside the designated time creates significant inefficiencies in the

_____

[9] Plaintiffs rely upon Stella for the proposition that the illegality of their mid-term reorganization cannot be a "for cause" basis for their removal where First Amendment interests are implicated. We, however, do not read Stella to stand for that principle. Stella involved the removal of members of a local zoning board because of their votes to grant several controversial (arguably illegal) variances. 63 F.3d at 72. That case, however, came to us by way of interlocutory appeal from a denial of defendants' summary judgment motion as to qualified immunity. Id. at 73. As such, we merely made explicit our intention not to engage in "fact-bound delving into illegality" precluded by the interlocutory nature of the appeal. Id. at 77 (citing Johnson v. Jones, 515 U.S. 304 (1995)). Our decision in Stella contains nothing that would prevent us from factoring the illegality of plaintiffs' mid-term reorganization into our analysis.

-18-

Commission which would "hamper the [Town's] performance of public functions." Rankin, 483 U.S. at 384. The district court recognized the costs of such inefficiency, characterizing the numerous reorganizations as "a lot of activity with consequences to the taxpayers of the town." See Connick, 461 U.S. at 151 ("Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs . . . [including] the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch."); see also Brasslett, 761 F.2d at 839 ("[T]he government also has a more legitimate concern for speech which actually impairs its functions than for that which does not.").

### 3. Balancing Analysis

Balancing the First Amendment interests of the plaintiffs here against the Town's countervailing interests in operational efficiency and enforcement of its bylaws, we conclude that the Board's actions to correct the illegal mid-term reorganization, and to bring the Commission into compliance with the Town bylaws, did not abridge any First Amendment protections. The Board did not have to tolerate the plaintiffs' unlawful mid-term reorganization, with its disruptive effect on the work of the Commission. The Town's interest in enforcing its bylaws, by directing plaintiffs to rescind the illegal reorganization or otherwise face removal from office, outweighs any First Amendment protection that extends to plaintiffs' right to vote to reorganize mid-term.

-19-

Having reached this conclusion, our First Amendment inquiry ends, and we need not reach the final step of the three-part test -- namely, the Mt. Healthy causation inquiry in which the court examines whether the protected expression was a substantial or motivating factor in the decision to remove plaintiffs from office. See Mt. Healthy, 429 U.S. at 287.

## C. For Cause Removal

With the First Amendment issue thus resolved against plaintiffs, we have rejected the only substantive objection raised by plaintiffs to their removal for cause. We also reject their related procedural argument that the First Amendment implications of their removal from the Commission required the Board to forego the for cause removal procedure provided by Massachusetts law in favor of a court action to remove plaintiffs. Accepting that argument would needlessly weaken the executive authority of the Board of Selectmen. If the exercise of that authority abuses First Amendment rights, the courts are available for redress, as this case demonstrates. Here, however, there was no abuse.

**Affirmed.**