**Samuel RAMOS RIVERA, Plaintiff(s)**

v.

**DEPARTAMENTO DE LA FAMILIA DE PUERTO RICO, et al., Defendant(s).**

**Civil No. 05–1109(JAG).**

United States District Court,
D. Puerto Rico.

Feb. 6, 2008.

---

Saúl Román–Santiago, Saúl Román Law Office, San Juan, PR, for Plaintiff.

Anabelle Quiñones–Rodríguez, P.R. Department of Justice—Federal Litigation, San Juan, PR, for Defendants.

## OPINION AND ORDER

JAY A. GARCIA–GREGORY, District Judge.

On January 28, 2005, plaintiff Samuel Ramos Rivera ("plaintiff") filed a complaint pursuant to 42 U.S.C. §§ 1983, 1985(3) and 1986, and alleging political discrimination and retaliation for "whistle-blowing" in violation of the First Amendment, against Puerto Rico Department of the Family; the Commonwealth of Puerto Rico; Azalia Ortega de Tirado, Carmen Arroyo Chinea, Luis Calderon Torres, Abi-

gail Matos, Olga Torres Ortega and Virginia Pizarro, in their personal and official capacities; and John Doe, Jane Doe and XYZ Insurance Co. (Docket No. 1). This Court's supplemental jurisdiction was invoked for claims under Puerto Rico Law No. 100 of June 30, 1959, as amended; Puerto Rico Law No. 115 of December 20, 1991, as amended; Puerto Rico Law No. 426 of November 7, 2000; and Articles 1802 and 1803 of the Civil Code of Puerto Rico.

Upon motion by defendants, on March 28, 2006, the Court dismissed plaintiff's claims against the Commonwealth of Puerto Rico and the Puerto Rico Department of the Family, as well as his claims for monetary damages against Azalia Ortega de Tirado, Carmen Arroyo Chinea, Luis Calderon Torres, Abigail Matos, Olga Torres Ortega and Virginia Pizarro, in their official capacities. (Docket No. 21). Additionally, on January 16, 2008, the Court entered partial judgment dismissing plaintiff's supplemental law claims under Puerto Rico Laws 100, 115 and 426 and under Civil Code Art. 1802. (Docket No. 63).

Pending before the Court is a Motion for Summary Judgment filed by defendants Azalia Ortega de Tirado, Carmen Arroyo Chinea, Luis Calderon Torres, Abigail Matos, Olga Torres Ortega and Virginia Pizarro, in their individual capacities ("defendants") on April 7, 2007 (Docket Nos. 38, 39), seeking dismissal of the claims against them. Plaintiff filed an opposition to the summary judgment motion on May 1, 2007 (Docket Nos. 48, 49, 50). For the reasons set forth below, the Court **GRANTS** defendants' motion for summary judgment.

## FACTUAL BACKGROUND

Plaintiff Samuel Ramos Rivera began to work for the Puerto Rico Department of the Family (the "Department") on November 21, 1978. He became a career employee in 1979 and in 1989 was appointed to the position of Fiscal Assistant II in the Department's ADSEF Division in Bayamon, Puerto Rico. Plaintiff continued to work for the Department in this position until his termination on February 3, 2004. In or around December of 2001, defendant Azalia Ortega–de–Tirado ("Ortega–de–Tirado") was designated Acting Associate Director or Services Director of the ADSEF Division. On January 10, 2002, Ortega–de–Tirado announced that co-defendant Luis Calderon ("Calderon") was to become the new supervisor of the ADSEF Division. At that time, Calderon had been working at the Department for approximately five (5) months in a transitory position as Administrative Official I. In a letter dated January 11, 2002, plaintiff notified co-defendants Carmen Arroyo–Chinea ("Arroyo–Chinea") and Ortega–de–Tirado of his disagreement with Calderon's designation, stating that there were others in the ADSEF Division that were more qualified and experienced than Calderon and that he believed the decision to appoint him was politically motivated. Defendants Ortega–de–Tirado, Calderón, and Arroyo–Chinea are affiliated with the Popular Democratic Party (PDP), while Plaintiff is an active member of the New Progressive Party (NPP).

Plaintiff claims that after writing the January 11, 2002 letter, Ortega–de–Tirado began to harass him by refusing to compensate him for work-related tasks completed outside the office and denying "evidence to justify his absences from office [sic] while attending medical appointments and other personal matters." He also alleges that his speech resulted in multiple undue reprimands against him for deficient work attendance. He wrote multiple letters to Ortega–de–Tirado's supervisor Arroyo-Chinea complaining of the alleged harassment. Arroyo–Chinea allegedly

promoted and supported the actions taken by Ortega–de–Tirado and took no efforts to assist Plaintiff. On March 6, 2002, Ortega summoned plaintiff for a meeting where she discussed an allegation that plaintiff had sexually harassed co-defendant Virginia Pizarro. Plaintiff alleges that Pizarro's accusations of sexual harassment are false and defamatory. Plaintiff also claims that a result of his speech, his salary was discounted for a *bona fide* trip he had made to the bank, on false accusations that he was not at the bank during the time he was supposed to be there. For that reason and because making bank deposits was not one of the inherent duties of his position since he did not have the appropriate appointment from the Department of Treasury of Puerto Rico to make deposits, plaintiff stopped making bank deposits.

In May 2002, plaintiff was notified of the intention to impose disciplinary measures against him. The letter sent to him listed the following reasons for the suspension: unjustified absence on February 13, 2002 from 1:00 to 2:45 p.m.; addressing Torres–Ortega in a rude and disrespectful manner; refusal to deposit a check on April 29, 2002 until Ortega was removed from her position; refusal to hand-over keys to the files and deposit slips; reaffirming in a meeting held on April 30, 2002 that he would not make deposits; refusal to remove a magazine containing obscene material from the files after being asked to do so. In November 2002, he was suspended from employment and salary for a period of forty-five (45) days, being reinstated on December 31, 2002. In a letter dated October 27, 2003 and signed by Yolanda Zayas, the Secretary of the Department, plaintiff was notified of his employer's intention to terminate his employment for alleged absenteeism, insubordination, and refusal to follow supervisor Ortega–de–Triado's instructions. On February 3, 2004, Plaintiff received a letter dated January 29, 2004, stating that his employment had been terminated.

Plaintiff alleges that the termination and defendants' actions constitute discrimination on the basis of his political affiliation and retaliation for the "whistle-blowing" activity of reporting Ortega–de–Tirado's abusive and discriminatory acts and violations of law or Department regulations.

## DISCUSSION

### A. *Standard of Review*

The Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in its pertinent part, that the Court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the Court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the Court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, the party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez*

v. *Pueblo International, Inc.*, 229 F.3d 49, 52 (1st Cir.2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine." "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." *Id.* at 252. It is therefore necessary that "a party opposing summary judgment must 'present definite, competent evidence to rebut the motion.'" *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994) (quoting *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), cert. denied, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992)).

In making this assessment, the Court "must view the entire record in the light most hospitable to the party opposing summary judgement, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

B. *Defendants Motion for Summary Judgment*

Defendants motion for summary judgment rests on several arguments. First, defendants argue that plaintiff does not have a cognizable claim under section 1983. Defendants state that plaintiff does not have a cognizable claim of political dis-crimination because the record is devoid of any evidence that the reason for the adverse employment action was his political affiliation, there is no causal link between their alleged actions and the adverse employment action and plaintiff lacks a claim of First Amendment retaliation. It is defendants' contention that the reason for plaintiff's suspension was his pattern of unjustified absences and tardiness in contravention to the norms and regulations of the Department. Furthermore, plaintiff's political affiliation could not have been the reason for the adverse employment actions because the defendants were not aware of it. Defendants argue that plaintiff has insufficient evidence to make a prima facie case of political discrimination but even if he could meet that burden, the evidence establishes that the same action would have been taken regardless of any political motivation because he violated Department regulations. Another reason defendants contend that plaintiff has no actionable 1983 claim is that none of them had the power of authority to impose disciplinary measures against him. This power rests solely on the nominating authority.

Next, defendants argue that plaintiff does not have a cognizable claim of First Amendment retaliation because the letter he wrote, protesting the appointment of Luis Calderon as supervisor of ADSEF, is not protected speech. In the alternative, defendants argue that plaintiff's First Amendment claim is time-barred because he filed suit more than a year after he wrote the letter that triggered the pattern of retaliation against him.

In addition, defendants state that they are entitled to qualified immunity as to the federal causes of action because the evidence does not show that defendants violated plaintiff's constitutional rights, defendants' actions against plaintiff were not politically motivated, and plaintiff did not

have a clearly established right to make his expressions as a public employee.

In his opposition, plaintiff first states that he meets the requirements of a cause of action under section 1983. It is plaintiff's contention that "[t]he evidence of co-defendants knowledge of plaintiff's political preference in favor of the NPP, coupled with the fact that all co-defendants were identified with the PDP, that co-defendants conspired and abuse of their power to harass, prosecute, retaliate, and discriminate against plaintiff after he denounced the political favoritism in co-defendant Luis Calderon's appointment by letter dated January 11th, 2002 is sufficient direct and circumstantial evidence from which a jury reasonably may infer that Ramos' constitutionally protected conduct was a substantial or motivating factor behind the adverse employment action." Furthermore, he states "[t]hat Plaintiff denounced to his superior, co-defendant Azalia Ortega and Carmen Leticia Arroyo, the political favoritism in co-defendant Luis Calderon's appointment, [and that] that served as the basis for reprimands and subsequent suspension in November 2002 and ultimately his termination from employment in February 2004 is sufficient evidence to prove that the constitutionally protected conduct was a substantial or motivating factor for the adverse employment decision." As to the causal link, plaintiff states that "[t]he letters of reprimand and the subsequent suspension and termination from employment is fact-specific proof of the a causal connection linking defendants' conduct, as manifested in the adverse employment decision, to plaintiff's political speech and belief." Lastly, although plaintiff argues that the defendants were not the nominating authority, they had personal involvement with the adverse employment action against plaintiff.

As to the issue of qualified immunity, plaintiff argues that he has asserted viable claims of violations of his speech and associational rights under the First Amendment and that defendants must have known that their conduct was unlawful.

Finally, plaintiff asserts that the Court should exercise supplemental jurisdiction of his claim under Article II, Section 1 of the Constitution of the Commonwealth of Puerto Rico, which protects against political discrimination.

### C.  Civil Rights Claim

■ "An actionable section 1983 claim must allege facts sufficient to support a determination '(i) that the conduct complained of has been committed under color of state law, and (ii) that [the alleged] conduct worked a denial of rights secured by the Constitution or laws of the United States.'" Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 998 (1st Cir.1992) (citations omitted). There are two aspects to the second prong: (1) there must be an actual deprivation of a federally protected right; and (2) there must be a causal connection between defendants' conduct and the deprivation of such right. See Gutierrez–Rodriguez v. Cartagena, 882 F.2d 553, 559 (1st Cir.1989). Additionally, the causal connection element requires that plaintiff establish for each defendant, that the defendant's own actions deprived plaintiff of her protected rights. Id. at 562 (holding that liability may not be predicated upon a theory of respondeat superior because a supervisor can be liable only for his own acts or omissions).

■ The rights asserted by plaintiff in this case are protected under the First Amendment, since plaintiff claims that defendants' actions were motivated by political animus or retaliation for whistle-blowing. "The first amendment is implicated whenever a government employee is disci-

plined for his speech." *Bennis v. Gable*, 823 F.2d 723, 731 (3rd Cir.1987) *citing Waters v. Chaffin*, 684 F.2d 833, 837 n. 9 (11th Cir.1982).

*Political Discrimination*

■ A two part burden shifting framework is used to evaluate claims of political discrimination. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *see also Padilla–Garcia v. Guillermo Rodriguez*, 212 F.3d 69, 74 (1st Cir.2000). To establish a *prima facie* case of political discrimination, a plaintiff must produce sufficient direct or circumstantial evidence to raise the inference that his political affiliation was a substantial or motivating factor behind the challenged adverse employment action. *Padilla–Garcia*, 212 F.3d at 74; *Acevedo–Diaz v. Aponte*, 1 F.3d 62, 66 (1st Cir. 1993); *Rivera–Cotto v. Rivera*, 38 F.3d 611, 614 (1st Cir.1994). The plaintiff's burden under *Mt. Healthy* goes directly to causation. *Padilla–Garcia*, 212 F.3d at 74. To prevail in her *prima facie* case, plaintiff must point to evidence in the record that would "permit a rational factfinder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus." *Id. (citing Rivera–Cotto*, 38 F.3d at 614). However, "merely juxtaposing a protected characteristic—someone else's politics—with the fact that plaintiff was treated unfairly is not enough to state a constitutional claim." *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 58 (1st Cir.1990); *see also Rivera–Cotto*, 38 F.3d at 614 ("Without more, a non moving plaintiff-employee's unsupported and speculative assertions regarding political discrimination will not be enough to survive summary judgment"). What is required is a fact specific showing that a causal connection exists that links the adverse employment action to the plaintiff's politics. *Correa–Martinez*, 903 F.2d at 58. The plaintiff must raise a plausible inference that she was subjected to discrimination on the basis of her political views or affiliation. *Id.*

■ If the plaintiff proves his *prima facie* case, the burden then shifts to the defendant, who must articulate a nondiscriminatory ground for the adverse employment action and establish, by a preponderance of the evidence, that he would have taken the same action regardless of the plaintiff's political beliefs (this is commonly referred to as the *Mt. Healthy* defense). *Padilla–Garcia*, 212 F.3d at 74; *Acevedo–Diaz v. Aponte*, 1 F.3d at 66. "... [T]he defendant employer's *Mt. Healthy* defense ensures that a plaintiff-employee who would have been dismissed in any event on legitimate grounds is not placed in a better position merely by virtue of the exercise of a constitutional right irrelevant to the adverse employment action." *Acevedo–Diaz v. Aponte*, 1 F.3d at 66.

■ "In a political discrimination case, the plaintiff may discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." *Id.* at 77. "The evidence by which the plaintiff established her *prima facie* case may suffice for a fact finder to infer that the defendant's reason is pretextual and to effectively check summary judgment." *Padilla–Garcia*, 212 F.3d at 74. Ultimately, it is the defendant's burden to persuade the factfinder that its reason is credible. *Id.* at 77–78. The defendant must show that the allegedly *bona fide* reasons for the adverse employment actions were sufficient by themselves to justify the decision. *Acosta–Orozco v. Rodriguez–de–Rivera*, 132 F.3d 97, 103 (1st Cir.1997).

Although plaintiff need not produce direct evidence of a politically-based discriminatory animus (*see Acosta–Orozco v. Rodriguez–de–Rivera*, 132 F.3d 97, 101–02 (1st Cir.1997)), in this case, he did not produce any evidence of a politically-based discriminatory animus. Plaintiff offers only his own testimony as proof that defendants acted against him because of his political affiliation. However, even his own testimony leaves the Court empty-handed since plaintiff's allegation of political discrimination is based solely on the fact that while he belonged to one political party, defendants belonged to another. On the other hand, defendants have offered proof that the measures taken against plaintiff were taken for other non-discriminatory reasons and even if those actions had been politically motivated the same measures would have been taken regardless of his protected conduct. Plaintiff was presented with letters of reprimand for tardiness dating as far back as 1996. Although plaintiff tries to attack this evidence as irrelevant because it is outside the time period of the alleged discriminatory acts, the Court believes it to be relevant to prove that some of the actions that caused his dismissal were part of a pattern that dated back to before his protected speech. Moreover, plaintiff does not link defendants to the adverse employment action nor does he contest that they lacked the power to take such actions against him. The letters of reprimand and the subsequent suspension and termination from employment do not, as plaintiff would like the Court to believe, prove the a causal connection between the adverse employment action and plaintiff's political speech

and belief. It is a conclusory allegation, unsupported by the record. At the end of the day, plaintiff has failed to produce sufficient direct or circumstantial evidence to raise the inference that his political affiliation was a substantial or motivating factor behind the challenged adverse employment action; he has failed to prove causation. As such, plaintiff has not met his burden in making a *prima facie* case of political discrimination.

Moreover, even if the Court deems plaintiff to have presented a *prima facie* case of discrimination, this does not preclude the entry of summary judgment on the political discrimination claim. Defendants presented sufficient evidence to prove that plaintiff's behavior was the reason behind his suspension and dismissal. Plaintiff received several notices of the behavior that led to his suspension and to his dismissal: absenteeism and insubordination. Accordingly, defendants have met their burden of establishing that there were *bona fide* reasons sufficient by themselves to justify the adverse employment action.

On the other hand, plaintiff has not met his burden in proving that defendant's proffered reasons for the disciplinary actions against him were pretextual. Of all the reasons listed in the letter which notified of the intention to impose disciplinary measures against him,[1] plaintiff only denies that he was absent without justification on February 13, 2002 from 1:00 to 2:45 p.m. Plaintiff only objects to his employer's claim that he had a pattern of absenteeism. He does not contest his employer's well-supported claim that he

---

1. The reasons listed were: unjustified absence on February 13, 2002 from 1:00 to 2:45 p.m.; addressing Torres–Ortega in a rude and disrespectful manner; refusal to deposit a check on April 29, 2002 until Ortega was removed from her position; refusal to hand-over keys to the files and deposit slips; reaffirming in a meeting held on April 30, 2002 that he would not make deposits; refusal to remove a magazine containing obscene material from the files after being asked to do so.

was insubordinate and refused to follow instructions. On the contrary, plaintiff concedes that he decided to stop making bank deposits, a task he had been carrying out regularly. Plaintiff merely justifies his actions by stating that he would not make any bank deposits after he was unfairly discounted from his paycheck the time he spent making one deposit and that in any case, he does not have the necessary authorization from the Puerto Rico Department of the Treasury to make those deposits. These explanations are not satisfactory. The Court's role here is not to determine whether the internal workings of an office are generally fair or not, or whether an employee was justified in protesting said workings by refusing to carry out certain tasks. The role of this Court is very limited and it is to determine whether plaintiff has presented an actionable claim of political discrimination. Taking the totality of the record into consideration and making all reasonable inferences in plaintiff's favor, the Court cannot say that he has. Defendants' evidentiary proffer compels the finding that political discrimination did not constitute a "but for" cause for the adverse employment actions. There is nothing that links the adverse employment actions to plaintiff's politics. Beyond stating that defendants belonged to the PDP party and he to the NPP and that he was unhappy with how he was treated by the PDP members in the office, all of which amounts to "merely juxtaposing a protected characteristic— someone else's politics—with the fact that plaintiff was treated unfairly," there is no evidence of incidents which might allow the Court to make a reasonable inference of political animus in plaintiff's favor. *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d at 58. Unlike *Montfort–Rodri-*

guez v. Rey–Hernandez, 504 F.3d 221 (1st Cir.2007), where it could be reasonably inferred through the circumstantial evidence that plaintiff's political affiliation was a substantial or motivating factor in the adverse employment actions, here, no such inference is reasonable.[2]

*"Whistle-blowing"*

Plaintiff alleges that he reported to his supervisors that Calderon's designation to the position of supervisor was politically motivated and amounted to political discrimination because he was not qualified for the position. According to plaintiff, as a result of his speech, he was repeatedly harassed, discriminated against, and subjected to unjustified reprimands by his supervisor Ortega–de–Tirado in violation of law and Department regulations.

To prevail on a "whistle-blowing" claim, a plaintiff must ultimately establish that (1) the speech at issue involves matters of public concern, *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1685, 75 L.Ed.2d 708 (1983); (2) the plaintiff's and the public's First Amendment interests outweigh the government's interest in promoting efficiency in the services that it provides, *Mullin v. Town of Fairhaven*, 284 F.3d 31, 37 (1st Cir.2002); and that (3) the "protected expression was a substantial or motivating factor" in the adverse employment decision. *Id.* at 38 *(citing Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576 (1977)); *see also Guilloty Perez v. Pierluisi*, 339 F.3d 43, 51 (1st Cir.2003) *(quoting Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811 (1968)).

**2.** In *Montfort–Rodriguez v. Rey–Hernandez*, 504 F.3d 221 (1st Cir.2007), the First Circuit held that there was a fact issue as to whether defendant was aware of employees' political alliance and as to whether he replaced them with political allies.

First, the speech involved here could be a matter of public concern. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). "That determination may require an inquiry into the employee's motive for the speech." *Mullin,* 284 F.3d at 38. Although plaintiff's motive in complaining may have been in part benefitting himself professionally, since he stated that a person with more experience should have been appointed to the position, naming himself as one of the people who could have been appointed, there is public interest in the appointment of non-qualified individuals to governmental positions for political reasons. Plaintiff's "revelations directly implicated a topic of inherent concern to the community-official misconduct by ... incumbent official[s]." *O'Connor,* 994 F.2d at 915. His speech did not have to do with "internal personnel procedures, affecting only himself and other ... employees." *Id.* Making all reasonable inferences in favor of plaintiff, the Court deems plaintiff to have carried his burden in proving this prong of the "whistle-blowing" test.

As to the second prong of the test, which inquires whether plaintiff's and the public's First Amendment interests outweigh the government's interest in promoting efficiency in the services that it provides, the Court believes that the balance could reasonably tilt in favor of plaintiff's and the public's interest. The public interest in the preferential practices in appointments to public office could outweigh plaintiff's personal interest in speaking out if said interest was indeed "relatively slight" and "heavily weighting the Pickering scale in favor of First Amendment protection against retaliation for [plaintiff's] speech." *O'Connor,* 994 F.2d at 916.

Finally, it must be determined whether the "protected expression was a substantial or motivating factor" in the adverse employment decision. *Mullin,* 284 F.3d at 38. Plaintiff in this case has not proven that his speech was a "substantial or motivating" factor in his discharge by the Department. The reprimands he received for his behavior did not start after his speech. On the contrary, plaintiff had been receiving notices of unjustified absences since 1996. Moreover, defendants have proven that the motivating factors in plaintiff's dismissal were his absenteeism, his irreverence and his admitted failure to perform certain duties (i.e. make bank deposits). The Court is unpersuaded to believe that plaintiff's speech was a substantial or motivating factor in the adverse employment actions suffered by plaintiff. Plaintiff's allegations, at most, amount to a complaint that his letter did not receive a warm welcome by his supervisors and that possibly, he could have been treated unfairly. That alone, does not sustain his claim.

Since plaintiff's claims of political discrimination and retaliation for "whistle-blowing" do not rise to a level of constitutional violation, they are not cognizable under section 1983.

### D. *Qualified Immunity & Statute of Limitations*

Having determined that plaintiff does not have a cognizable claim under 42 U.S.C. §§ 1983, 1985(3) or 1986, for political discrimination and retaliation for "whistle-blowing" in violation of the First Amendment, there is no need for the Court to discuss whether defendants are entitled to qualified immunity or whether plaintiff's claims are time-barred.

### E. *Supplemental Claim*

██ Under 28 U.S.C. § 1367(a), "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The Supreme Court has observed that the "supplemental jurisdiction statute codifies [the] principles" established in *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), where the Court held that federal judicial power may be exercised when there is a federal claim properly before a federal court and a state claim arises from "a common nucleus of operative fact." *See City of Chicago v. International College of Surgeons,* 522 U.S. 156, 173, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997).

██ However, the dismissal of a plaintiff's federal claim at the early stages of a suit, well before the commencement of trial, triggers the dismissal without prejudice of any supplemental state-law claims. *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130; *see also Martinez v. Colon,* 54 F.3d 980, 990 (1st Cir.1995)(affirming dismissal without prejudice of pendent claims when the district court determined "far in advance of trial that no legitimate federal question existed"). Basically, if the federal claims are properly dismissed, the District Court does not abuse its discretion in declining to exercise supplemental jurisdiction over the state-law claims asserted in the case. *Ramos–Piñero v. Puerto Rico,* 453 F.3d 48, 55 (1st Cir.2006).

Since in this case, the federal claims have been properly dismissed well before the commencement of trial, this Court will exercise its discretion and decline supplemental jurisdiction over the state-law claim asserted under Article 1803 of the Civil Code of Puerto Rico.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' motion for summary judgment and dismisses plaintiff's claims against defendants. Judgment shall enter accordingly.

IT IS SO ORDERED.